Fred LEWIS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 3, 1967.

Fred Lewis, pro se.

Robert Matthews, Atty. Gen., Charles W. Runyan, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

Fred Lewis, a prisoner in the state penitentiary at Eddyville, appeals from an or-

der of the Bell Circuit Court overruling without a hearing his RCr 11.42 motion to set aside a conviction and 4-year prison sentence imposed by that court on January 27, 1964, pursuant to his plea of guilty to an indictment charging him with detaining a woman against her will. KRS 435.110.

Our review is confined to whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction. Cf. Baldwin v. Commonwealth, Ky., 406 S.W.2d 860 (1966); Coles v. Commonwealth, Ky., 386 S.W.2d 465 (1965); Warner v. Commonwealth, Ky., 385 S.W.2d 62, 64 (1964).

The record supporting the conviction shows that Lewis was indicted by the Bell County grand jury on October 8, 1963, and charged with having detained one Nell Honeycutt on or about August 26, 1963, against her will and for the purpose of having carnal knowledge of her. The indictment also charged three previous felony convictions. KRS 431.190. On January 6, 1964, an order was entered directing that Lewis be brought from the state prison to the Bell Circuit Court for arraignment and trial. The next entry is an order dated January 27, 1964, showing that he appeared in court with counsel, waived arraignment, pleaded guilty after the Commonwealth had waived the habitual criminal charge, and was sentenced to four years' imprisonment "to run consecutively with the terms the defendant is now serving including term from Madison County, Kentucky." Following allocution a judgment was entered accordingly on the same day.

The RCr 11.42 motion now under review alleges, among other things, the following facts and circumstances:

On August 26, 1963, Lewis was in the company of Nell Honeycutt and Linda Leath at the home of a man named Harris. Lewis took the two girls for a brief visit to the home of his mother, whom Nell knew. Upon their return to Harris' home Linda got out of the car and Nell accepted Lewis' invitation to accompany him elsewhere. Harris, who was infatuated with Nell, objected, but they drove off anyway, whereupon Harris called the sheriff and accused Lewis of having shot at Linda. When Lewis returned Nell to her home at about 4 o'clock that afternoon he was apprehended and arrested. On the following day he was bound over to the grand jury, taken to Frankfort and there held in jail incommunicado for a week, after which his parole from a 10-year sentence previously meted out by the Madison Circuit Court was revoked and he was recommitted to prison.

Five months later, on January 27, 1964, Lewis was brought from prison to the Bell Circuit Court and was there for the first time informed that he had been accused of detaining a woman against her will. He had assumed until then, he alleges, that he was being returned to face the shooting charge. Lewis was indigent and unable to employ counsel, so the trial court had appointed an attorney to represent him. With the approval of the trial court his counsel and the prosecuting attorney agreed on a guilty plea and four-year sentence to run consecutively with his prior sentences. Lewis did not accede to this arrangement, and demanded a jury trial, but his attorney said he would not try the case for him, that he had agreed to appointment on the basis of a guilty plea, whereupon a heated argument took place among the lawyers and the judge. According to his motion, Lewis then "announced to the court that he had been brought before the court, charged with a crime he knew nothing about, and that he had no time to prepare a defense with counsel that he was a confined prisoner in the state penitentiary, with no money to employ counsel, to defend him. That in view of these facts, and that he lacked the qualifications to represent himself, that he had already pleaded guilty to a four (4) year sentence, to go ahead and run it anyway they wanted just take him back to prison."

It is further alleged in the motion that Lewis was brought before the court and

spectators handcuffed to a state trooper, was denied the opportunity of speaking to his accuser before entering a plea, was denied the right to consult with his counsel in private, and was threatened with a life sentence unless he entered a plea of guilty. Attached to the motion is an affidavit by Nell Honeycutt to the effect that Lewis did not detain her against her will and that she was not present when his case was called for trial, and an affidavit by Linda Leath to the effect that he had not at any time shot at her.

Though some of the facts therein stated are not alleged specifically in the motion, we quote the following excerpt from Lewis' brief as an apt summary of the position in which he found himself at the time the guilty plea was entered:

"The indictment was read to Appellant, which charged him with detaining Nell Honeycutt, against her will, to have Carnal knowledge with her, and three prior convictions of felonies. Appellant entered a Not Guilty plea. Counsel had been appointed for Appellant, prior to his arrival in Court. Counsel informed Appellant that the Court had informed him, that the Court would agree to a 4 year sentence, or if he stood trial, he would have to defend himself, and in turn would receive a life sentence as a habitual Criminal.

"Appellant stated his desire of trial by Jury, and asked for Continuance, which was denied, and the Commonwealth announced ready for trial. No witnesses had appeared for the prosecution, or for the defense, and the prosecution was to be had upon a statement, procured by the Bell County Attorney and Bell County Parole Officer, supposely made by Nell Honeycutt.

"Due to this reason, Appellant had no Counsel to defend him, no chance to summon witnesses, and rather than face a stacked deck, with his life at state, petitioner accepted the 4 year sentence to a Crime never Committed, returned to prison, and started to gather evidence and other

information, that would lead him to the whereabouts of Nell Honeycutt, which was finally accomplished, See Affidavit TR. p. 15. Upon this accumilation of facts Appellant presented in the trial Court his motion to vacate Judgment of Conviction as shown."

In Higbee v. Thomas, 375 U.S. 13, 84 S.Ct. 79, 11 L.Ed.2d 41 (1963), the United States Supreme Court remanded to this court for further consideration a habeas corpus proceeding in which we had held that Higbee's petition alleging that he had been denied effective assistance of counsel and pleaded guilty under duress did not state grounds for relief. The facts recited by the petition in this respect were that "counsel for the defense spent approximately three to five minutes with defendant prior to his assignment and therefore your petitioner did not and could not have a reasonable length of time to make, prepare and present an adequate defense," etc., and that after "the approximate three to five minute conference with said court appointed counsel who dominatedly insisted on entering a 'plea of guilty,' and further your petitioner being overwhelmed by both court and aforesaid counsel also being deceived by an oral statement from the Hopkins County Sheriff to your petitioner's wife in words to the effect that if Dave (meaning me—the petitioner) will plead guilty, he won't get over two to five years, and therefore your petitioner being deceived and under duress and coercion made the plea to the court but not of his own free will." He received a sentence of 21 years.

Obedient to the directive of the Supreme Court we reconsidered Higbee's petition and held it was sufficient to entitle him to a hearing on these questions, "(1) whether Higbee had reasonable and effective representation of counsel and (2) whether he understood the nature and consequences of a guilty plea *and entered the plea voluntarily*, which is to say, *free of such pressures or inducements as would make it unfair to hold him to it*." (Emphasis added.)

Higbee v. Thomas, Ky., 376 S.W.2d 305, 307 (1964).

■ In the more recent case of Jones v. Commonwealth, Ky., 389 S.W.2d 927 (1965), allegations that appointed counsel had refused to defend the movant unless he pleaded guilty and that he had so pleaded under duress were held sufficient to require a hearing under RCr 11.42.

It is our opinion that the allegations of Lewis' RCr 11.42 motion also were sufficient to require a hearing on the question of whether his plea of guilty was given voluntarily and free of duress—that is, free of circumstances unfairly inducing it.

■ Though it was held in Hargrove v. Commonwealth, Ky., 396 S.W.2d 75 (1965), that the appointment of counsel only five minutes before the trial is not ground for relief in the absence of a motion for continuance,[1] or a showing that the movant requested counsel to make such a motion, the significant distinguishing circumstance of the instant case is that if the facts stated in the motion are proved to be true, when it was made manifest to counsel and the court that Lewis did not wish to plead guilty his attorney should have moved for a continuance or the court should have ordered a continuance of its own volition, because it was obvious that he could not have been prepared for trial. The reasonable inference to be drawn from Lewis' motion is that he was confronted with the alternative of pleading guilty or going to trial unprepared and at the risk of receiving a life sentence. That, in our opinion, is a choice that deprives a man of his liberty without due process of law, for the simple reason that it is fundamentally unfair.

The Commonwealth's able brief contends that Lewis, a multiple offender, was afforded "a full measure of justice," the implicit suggestion being that he was fortunate, and apparently well represented, to come off with just four years instead of life imprisonment. The answer is that the measure of justice is exactly the same for one person as it is for another, for ex-convicts as well as those accused for the first time. Indeed, all who administer justice should exercise particular vigilance to safeguard the rights of defendants burdened by the stamp of previous convictions, because it is they whose rights are most likely to be grudgingly recognized and cavalierly treated. If, as Lewis claims, he was not guilty of the offense charged, and the prosecuting witness was not present to testify against him, a 4-year sentence is not a full measure of justice, but of injustice.

The cause is reversed and remanded to the circuit court for further proceedings in accordance with this opinion.

OSBORNE, J., dissenting.

OSBORNE, Judge (dissenting).

The appellant who had three previous felony convictions was indicted in the Bell Circuit Court for detaining a female against her will and also under the Habitual Criminal Act. On January 6, 1964, the court directed that he be brought from the Kentucky State Prison to that county for the purpose of arraignment and other proceedings in connection with the trial. He was so produced before the court on January 27, 1964, and was represented by the Honorable Paris Swinford. He and his attorney appeared before the court, waived arraignment, and entered a plea of guilty to the charge of detaining a female. The other charge under the Habitual Criminal Act was apparently waived by the Commonwealth. The records of the court show that the appellant waived trial by jury; that he was found guilty and his punishment fixed at confinement for four years, which was to run consecutively with

---

1. That Lewis asked for a continuance is stated in his brief but not, in so many words, in the RCr 11.42 motion itself.

the other sentences. On August 12, 1966, the appellant filed this motion under RCr 11.42 in which he sets out several grounds for relief, among which are inadequate time to prepare for trial, lack of effective counsel, collusion between court and counsel to cause him to plead guilty; that the charges against him were false and fraudulent; that he asked for a continuance and was overruled. These are the usual charges contained in the flood of groundless applications coming out of our penitentiaries. On August 19, 1966, the Bell Circuit Court overruled appellants motion to vacate the judgment, from this order he prosecutes this appeal. I am of the opinion that the trial court properly overruled the application. The records of the court are in direct conflict with the statements of his affidavit and to give any credence to the affidavit one must first presume that the records of the court are false and fraudulent; that the trial Judge is completely devoid of any of the decent and honorable attributes normally attributed to a judicial official and that the attorney violated all of the rules of his code of ethics and forced an innocent man to plead guilty in a court of law, which, if true, could require his disbarment. These charges are so flagrantly void of any semblance of truth that to give them the slightest judicial recognition is to violate all of the principles commonly recognized in our system of jurisprudence. In Commonwealth v. Watkins, Ky., 398 S.W.2d 698, this court stated, "The effect of a plea of guilty is to waive all defenses other than that the indictment charges no offense and to authorize the imposition of the penalty prescribed by law."

As to his charges that the allegations of the indictment were faked and that he is innocent of the offenses, we met this in King v. Commonwealth, Ky., 387 S.W.2d 582. He then claims that he asked for a jury trial and a continuance and that this was denied. This also has been faced by this court in Maye v. Commonwealth, Ky., 386 S.W.2d 731.

That language in the majority opinion bemoaning the fact that the defendant was unprepared for trial is somewhat disturbing. I would like to point out that any failure of preparedness upon his part is due to the fact that he commits one crime so closely upon the heels of the other that he does not have time to prepare his defenses. This certainly can not be the fault of the Commonwealth.

As to another remark in the opinion that we should safe-guard the rights of the defendant who is "burdened" by the stamp of previous convictions because it is they who are most likely to be "grudgingly recognized and cavalierly treated."

I should like to point out that those who are burdened by the stamp of previous convictions bring their own burdens upon their shoulders and certainly this should not make them nearer and dearer to the hearts of this court nor should we show any greater concern for their likes than for those who are not so burdened.

For the foregoing reasons, I dissent.