**Ralph S. BAZE, Jr., Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 99–SC–0028–MR.

Supreme Court of Kentucky.

April 20, 2000.

Rehearing Denied Aug. 24, 2000.

Timothy T. Riddell, Milton C. Toby, Lexington, for appellant.

A.B. Chandler III, Attorney General, David A. Smith, Assistant Attorney General, Paul D. Gilbert, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for appellee.

GRAVES, Justice.

Appellant, Ralph S. Baze, Jr., appeals to this Court as a matter of right from the Rowan Circuit Court's denial of his RCr 11.42 motion seeking the vacation of his murder convictions and death sentences. The facts of this case are set forth in our opinion affirming Appellant's two death sentences on direct appeal. *Baze v. Commonwealth*, Ky., 965 S.W.2d 817 (1997), *cert. denied*, 523 U.S. 1083, 118 S.Ct. 1536, 140 L.Ed.2d 685 (1998).

The trial court denied Appellant's RCr 11.42 motion, as well as a motion to reconsider, without an evidentiary hearing. Accordingly, our review at this time is confined to "whether the [RCr 11.42] motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." *Lewis v. Commonwealth*, Ky., 411 S.W.2d 321, 322 (1967).

Appellant argues that the trial court's summary dismissal of his motion without a hearing denied him meaningful post-conviction review. Further, Appellant sets forth seven allegations of ineffective assistance of counsel which he claims precluded him from receiving a fair trial: (1) counsel's failure to exercise all nine peremptory strikes in jury selection; (2) inadequate pre-trial investigation to locate available mitigation witnesses; (3) failure to object

to change of venue; (4) failure to provide pre-trial counseling; (5) failure to move for a mistrial or continuance; (6) inappropriate comments in closing arguments; and (7) failure to object to police officers' presence during trial.

## I. TIME FOR PREPARATION OF RCr 11.42 MOTION

Appellant correctly states that although the Due Process Clause of the United States Constitution does not require states to provide a mechanism for post-conviction relief, *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), when a state chooses to do so the courts must construe and interpret available remedies in a manner which accords with the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Appellant argues, however, that the post-conviction scheme in Kentucky does not provide a uniform process for death row inmates to meaningfully develop and present their RCr 11.42 issues. Citing his case as an example of the disparate treatment of death row inmates, Appellant notes that his conviction became final on April 20, 1998, when the United States Supreme Court denied certiorari. An execution warrant was thereafter signed by the Governor on May 5, 1998, and Appellant's execution was scheduled for June 5, 1998. Appellant contends that upon the signing of the execution warrant, the three-year statute of limitations contained in RCr 11.42 and the one-year time period imposed under the AEDPA[1] became irrelevant, and the filing of an RCr 11.42 motion, however incomplete, was necessary to stay his execution.

Appellant's argument with respect to the need for additional time to prepare and file

---

1. The Antiterrorism and Effective Death Penalty Act, signed into law in 1996, imposes a general one-year statute of limitations on federal habeas petitions, running from the date

of finality of the state court conviction. The limitations period is tolled while a properly filed state post-conviction action is proceeding. 28 U.S.C. § 2244(d)(1).

an RCr 11.42 motion is virtually identical to the argument raised and rejected in *Bowling v. Commonwealth*, Ky., 926 S.W.2d 667, 670 (1996), *cert. denied*, 517 U.S. 1223, 116 S.Ct. 1855, 134 L.Ed.2d 955 (1996), in which we stated:

We are aware of the complexities involved in preparing an RCr 11.42 motion that will adequately address any and all legal challenges a defendant may have. The rule states that the motion "shall state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds." RCr 11.42. Moreover, any possible grounds that could have been raised will be lost if not presented in the same proceeding. *Id.* These requirements must be met or the motion may be summarily dismissed.

It is very clear that any defendant is entitled to a review of the conviction and death sentence by the Kentucky Supreme Court and the United States Supreme Court. KY CONST. § 110; KRS 532.075; U.S. CONST. art. III. Further, a defendant is entitled to pursue post-conviction remedies, and appeal, subject to the rules of this Court. Coupling the availability of these procedures with the gravity of the punishment involved, it is mandatory that a defendant raise all issues without delay. In recognition of the need for both speed and specificity, we hold that an RCr 11.42 motion must be filed in an expeditious manner and is subject to amendment, if appropriate, with leave of court. Due to the unquestioned right of defendants to have their contentions decided by a court, "leave [to amend] shall be freely given when justice so requires." CR 15.01.

The Department of Public Advocacy provided Appellant continuous competent counsel since the commencement of charges against him. Appellant had over fourteen months from the issuance of this Court's opinion affirming his conviction to prepare an RCr 11.42 motion. Although he argues that new witnesses were identified and "a comprehensive review of [his] medical history was undertaken for the first time," Appellant fails to identify a single issue he would have raised but for the time constraints. Reviewing federal appellate courts clearly expect work on a condemned prisoner's habeas petition to commence upon this Court's announcement of its opinion affirming the denial of RCr 11.42 relief. *See In re Parker*, 49 F.3d 204, 212 (6th Cir.1995). We have expressed a similar expectation where the next step in the attack on the judgment is from direct appeal to RCr 11.42. *Sanborn v. Commonwealth*, Ky., 975 S.W.2d 905, 909 (1998), *cert. denied*, 526 U.S. 1025, 119 S.Ct. 1266, 143 L.Ed.2d 361 (1999). Therefore, we "decline Appellant's invitation to revisit this issue." *Bowling v. Commonwealth*, Ky., 964 S.W.2d 803, 804 (1998).

## II. COUNSEL'S FAILURE TO EXERCISE PEREMPTORY CHALLENGE

■ Appellant argues that his trial counsel was constitutionally deficient in negligently failing to exercise a ninth peremptory challenge available to the defense. As a result, a correctional officer the defense had intended to strike was allowed to serve on the jury, and a juror "who might have been disinclined to impose the death penalty" was removed by the trial court as if he was the ninth juror struck.

On direct appeal, we held that the trial court properly denied Appellant's request to use his ninth peremptory strike, as this request was made after Appellant's counsel had been furnished a list of the Commonwealth's intended peremptory challenges.

"Peremptory challenges shall be exercised simultaneously ...," RCr 9.36(2), and "[n]o prospective juror may be challenged after being accepted unless the court for good cause permits it." RCr 9.36(3). Thus, when Baze returned his list containing only eight peremptory

challenges, his right to a ninth peremptory challenge was extinguished. *Mitchell v. Commonwealth*, Ky., 492 S.W.2d 878 (1973). One obvious reason for this rule is to preclude a party from saving his last peremptory challenge until after he has examined the opposing party's list to insure that he does not waste a peremptory challenge on a juror who also has been challenged by the other party.

*Baze, supra*, at 825. A similar claim was rejected by the Sixth Circuit in *McQueen v. Scroggy*, 99 F.3d 1302 (6th Cir.1996), where the ninth peremptory was lost not through omission, but through counsel's use of the challenge to remove a juror who, according to McQueen, should have been stricken for cause in the first place.

There is no constitutional right to peremptory challenges, *see Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), and there is no showing that had there been one more peremptory available, it would have had any effect on the trial at all, let alone that the lack of a peremptory (because it was used on Leo Johnson) resulted in an unconstitutionally biased jury. It is insufficient simply to claim that, had there been another peremptory available, a different juror would have been excluded, and the result might have been a more favorable jury for McQueen. In other words, it is not enough for a defendant to say "I would have been better off if ..." He must demonstrate that judicial or prosecutorial action (or inaction) resulted in a constitutional violation, not a tactical or strategic disadvantage. The constitution is not designed to afford either party a right to the most advantageous tactical or strategic situation possible. It is designed to insure that a person receives a fair trial by an impartial jury.

*McQueen, supra*, at 1320–1321.

Appellant argues that in this case, trial counsel's failure to exercise the ninth peremptory challenge was an oversight and cannot be excused under the guise of "trial strategy." Moreover, he contends that he was clearly prejudiced by trial counsel's error, as the correctional officer voted to convict him as well as sentence him to death.

Even assuming, however, Appellant's theory, this Court has repeatedly held that "[a]n issue raised and rejected on direct appeal may not be relitigated ... by claiming that it amounts to ineffective assistance of counsel." *Sanborn, supra.* Notwithstanding this fatal procedural deficiency, Appellant's claim also fails on its substantive merits.

■ The entirely speculative and self-serving assertion that, but for counsel's negligence, Appellant would have used the ninth challenge to strike the correctional officer, thereby altering the outcome of the trial is convenient revisionism. We simply cannot say that trial counsel was deficient, and Appellant was prejudiced as a result of the failure to exercise the ninth challenge, because it is virtually impossible to know what a differently impaneled jury would have done. For this Court to hold otherwise would essentially create a practice in which error could be built into any trial record simply through counsel's decision not to exercise all peremptory challenges, resulting in this type of argument being raised in every post-trial proceeding. It is not the function of this Court to usurp or second guess counsel's trial strategy.

### III. COUNSEL'S PRETRIAL INVESTIGATION

■ Appellant next claims that his trial counsel failed to conduct adequate pretrial investigation and secure the attendance of mitigation witnesses, and that these failures amounted to representation below that which is guaranteed by the Sixth Amendment of the United States Constitution. In support, Appellant relies upon affidavits submitted by counsel two months prior to trial in which they concede investigative shortcomings due to heavy work-

loads, as well as a lack of cooperation from the Commonwealth in providing discovery. The trial court did, in fact, grant a continuance, however Appellant asserts that such was granted to have him psychologically evaluated, and was not in response to counsel's admission that they were unprepared for trial.

■ We are of the opinion that trial counsel's affidavits are, at best, self-serving and, more likely, a disingenuous attempt to inject error into the record. Either way, the test for effectiveness is not whether counsel could have done more, *Waters v. Thomas,* 46 F.3d 1506, 1514 (11th Cir.1995) (en banc), but rather whether counsel's errors undermined the reliability of the trial. *McQueen, supra,* at 1311–1312. Counsel's deficient investigation, if in fact it was so, does not appear to have violated this well-recognized standard.

■ Trial counsel has a clear "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). A reasonable investigation is not, however, the investigation that the best defense lawyer, blessed not only with unlimited time and resources but also with the inestimable benefit of hindsight, would conduct. *Kokoraleis v. Gilmore,* 131 F.3d 692, 696 (7th Cir.1997); *Stewart v. Gramley,* 74 F.3d 132, 135 (7th Cir.1996); *Waters, supra,* at 1514.

With regard to the alleged failure to secure the attendance of mitigation witnesses, Appellant concedes that his counsel and the trial court went through an elaborate and lengthy process to determine which out-of-state witnesses could offer testimony. Defense counsel even retained an Ohio attorney to facilitate the process of interviewing Appellant's family members located there. In fact, on direct appeal Appellant argued that he was entitled

to a directed verdict in light of the substantial mitigation evidence presented at trial. Nonetheless, Appellant now contends that counsel failed to secure several mitigation witnesses who could have shed light on his troubled childhood.

■ Depending on the circumstances, there are many ways a case may be tried. *Waters, supra,* at 1512. The test for effective assistance of counsel is not what the best attorney would have done, but whether a reasonable attorney would have acted, under the circumstances, as defense counsel did at trial. *Id.* Appellant offers this Court nothing to demonstrate that trial counsel did not act reasonably by failing to secure the witnesses about whose absence he now complains. Nor is there any evidence as to how these witnesses would have helped, or even which witnesses counsel did or did not interview.

■ It is reasonable and necessary for counsel to place a certain reliance on its client. If the client, his family and friends impede counsel by concealing psychological problems that might have provided an alternative theory of mitigation, counsel cannot be faulted for not exploring the unknown. *Strickland, supra,* at 691, 104 S.Ct. at 2066–2067; *Kokoraleis, supra,* at 697; *Stewart, supra,* at 135; *LaRette v. Delo,* 44 F.3d 681, 685 (8th Cir.1995). The conduct of a trial is a necessarily constrained operation and attorneys and defendants alike must make, and stand by, difficult decisions concerning the allocation of resources, trial tactics, and countless other issues. Effective assistance of counsel entails the reasonable anticipation and making of these decisions, not the elimination of them altogether.

### IV. CHANGE OF VENUE

■ Appellant's RCr 11.42 motion belatedly complained that the trial judge erroneously transferred venue from Franklin County to Rowan County[2]. This matter

2. The offenses were committed in Powell

County, however, it was agreed that Appellant

was raised at trial but abandoned on direct appeal.

■ As previously stated, RCr 11.42 cannot be used to relitigate issues decided on direct appeal, or to raise issues that could have been presented on direct appeal.

> It is not the purpose of RCr 11.42 to permit a convicted defendant to retry issues which could and should have been raised in the original proceedings, nor those that were raised in the trial court and upon an appeal considered by this court.

*Thacker v. Commonwealth*, Ky., 476 S.W.2d 838, 839 (1972).

Appellant argues that it is not the actual transfer of venue, but rather trial counsel's failure to object to the transfer that is at issue. He contends that *Evans v. Commonwealth*, Ky., 645 S.W.2d 346, 347 (1982), and *Wolfenbarger v. Commonwealth*, Ky.App., 936 S.W.2d 770, 773 (1996), prohibited the trial court's action and counsel failed to raise the proper objection. We disagree.

First, the record is clear that a discussion was held between both parties and the trial judge concerning moving the trial to Rowan County. Although the Commonwealth and defense counsel raised initial objections, all subsequently agreed to the transfer. Notwithstanding, Appellant's reliance on *Evans, supra,* and *Wolfenbarger, supra,* is misplaced. In *Evans,* we stated:

> The theory of forum non conveniens has one shortcoming which prevents its serving as an apt model for a change of venue. That is, it provides a basis on which one court may decline to entertain a case, but does not enable that court to force another court to take it. Theoretically we have in this state only one circuit court, but because there is no inherent authority for a judge in one

circuit to move a case to the judge of another, the situation is the same as if the courts within the different circuits were separate.

*Id.* at 347. Reiterating *Evans,* the Kentucky Court of Appeals held in *Wolfenbarger* that a Boone County Judge had no authority to conduct a trial in another county. *Wolfenbarger, supra,* at 772. However, in this case Judge Mains did not transfer the case to another judge or to a county outside of his circuit, but merely moved the trial to his own county. As such, trial counsel was not ineffective for failing to raise an invalid objection.

## V. FAILURE TO OBTAIN PSYCHIATRIC COUNSELING

■ Appellant argues that trial counsel's failure to obtain pre-trial psychiatric counseling for him resulted in him giving an interview with a reporter because he "needed to talk with someone." Appellant contends that this omission by counsel in failing to anticipate the events as they occurred compromised his defense.

It is undisputed that Appellant wanted to talk about the shootings. In fact, Appellant, without being questioned by the police, told one of the arresting officers, "You tell them that you got the right man. I'm the one that killed them son of a bitches." *Baze, supra,* at 820. Appellant later gave two interviews to a news reporter, providing a detailed account of the killing of the two police officers.

■ On direct appeal, this Court rejected Appellant's claim that the statements he made to the reporter should have been suppressed. *Id.* Appellant now seeks to relitigate the admissibility of statements by arguing that a multi-disciplinary team of trained professionals might have dissuaded him from talking to the reporters. Again, we disagree. Assuming arguendo

---

would not receive a fair trial in Powell County and venue was originally transferred to Franklin County. Subsequently, when Powell Circuit Judge James L. King disqualified him-

self due to a prior relationship with one of the victims, Rowan Circuit Judge William Mains was assigned as special judge. Judge Mains thereafter moved the trial to Rowan County.

that Appellant's talkativeness would have been sated by psychiatric intervention, "the fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required." *Ross v. Moffitt,* 417 U.S. 600, 616, 94 S.Ct. 2437, 2447, 41 L.Ed.2d 341 (1974). An attorney is not legally ineffective simply because his client disregards his advice.

■ Appellant's conscious decision to ignore counsel's advice and to speak with law enforcement authorities and news people following arrest and without the presence of counsel is not a reflection on the adequacy of his legal representation, but rather, perhaps, an indication that even the most effective representation may be of little use to such an individual. The Sixth Amendment protection requires that counsel be effective, not that counsel be heeded. *Brown v. Doe,* 2 F.3d 1236, 1244 (2nd Cir.1993).

## VI. FAILURE TO MOVE FOR CONTINUANCE OR MISTRIAL

■ Appellant contended from the start that there was another shooter involved on the day on question. Accordingly, he filed a fourteen (14) page motion for discovery seeking, in part, any evidence of other individuals in the vicinity armed with a small caliber weapon at the time of the incident. The trial court's order included the following:

> List and describe any weapons, or live or spent firearm projectiles, or footprints viewed or inspected within one thousand (1,000) yard radius of the scene of the shootings in this case by any person listed in paragraph 1 which was not seized. This is not meant to include the weapons or live projectiles in the possession of the official investigating personnel at the crime scene after the shooting, list and describe each item viewed or inspected. Name the person who decided not to seize each item, and

if known, the present whereabouts of each such item.

The Commonwealth responded by providing the entire investigative case file to the defense. However, the Commonwealth did not disclose until trial the fact that Detective Ashley used his .22 caliber rifle with a scope for the sole purpose of observing the scene through the scope.

Appellant raised a "blatant discovery violation" claim on direct appeal, which was rejected by this Court as being without merit and unworthy of discussion. *Baze, supra,* at 820. At this juncture, Appellant now complains that his counsel was ineffective in failing to request a continuance or mistrial at the introduction of the evidence regarding Detective Ashley. Appellant argues that trial counsel was surprised by information that, with proper investigation, he believes might have added an element to, or significantly altered the defense theory of the case. Moreover, he maintains that counsel's failure to act cannot be considered trial strategy. We find this contention to be completely without merit.

■ The testimony at trial indicated only that Detective Ashley used his rifle scope to observe the scene of the shooting from more than 500 feet. His rifle was not part of any shootout and there was no evidence presented that a shot was fired from the area where he was standing. Appellant cites no authority for the proposition that a police officer must disclose what type of weapon he or she was carrying during an incident in which that weapon was not fired. Moreover, Appellant fails to specify what further investigation could have been conducted in response to the new information. Speculation that a continuance or mistrial would have been granted is not sufficient evidence that counsel acted deficiently and prejudiced Appellant's right to a fair trial.

## VII. CLOSING ARGUMENT STATEMENTS

Appellant alleges that trial counsel was deficient in making statements during clos-

ing argument that called into question Appellant's credibility and undercut defense theories of the case. We disagree. Both statements Appellant takes issue with were merely comments on evidence introduced during the trial. Furthermore, Appellant has taken the statements out of context, as review of such reveals that trial counsel did, in fact, articulate the point Appellant now alleges he failed to make. Counsel was not ineffective during closing argument.

## VIII. POLICE PRESENCE IN THE COURTROOM

Appellant complains that trial counsel failed to object to the significant number of police officers present in the courtroom during the trial. Appellant does not state the actual number of officers, but nevertheless alleges that their presence possibly influenced the jury, and thus counsel was deficient in not raising an objection.

This case involved the murder of two police officers. As such, it was not unusual for fellow officers to be present, some in official capacity and others as spectators. We are not persuaded by Appellant's citation to *Woods v. Dugger*, 923 F.2d 1454 (11th Cir.1991), as that case involved the presence of over forty-five uniformed correctional officers. More importantly, as Appellant failed to raise on direct appeal any issue regarding prejudicial effect resulting from the officers' presence, he cannot now couch the claim as ineffective assistance of counsel in an RCr 11.42 proceeding.

The record clearly reflects that Appellant received constitutionally sufficient representation by trial counsel. Counsel did the best job it could with the facts presented. The jury deliberated at length in both the penalty and guilt phases of trial, which is an indication that Appellant received competent and credible representation.

Furthermore, the trial court properly determined that Appellant was not entitled to an evidentiary hearing on his RCr 11.42 motion. Clearly, there is no right to an evidentiary hearing even in a death penalty case. *Stanford v. Commonwealth*, Ky., 854 S.W.2d 742 (1993), *cert. denied*, 510 U.S. 1049, 114 S.Ct. 703, 126 L.Ed.2d 669 (1994); *Skaggs v. Commonwealth*, Ky., 803 S.W.2d 573 (1990), *cert. denied*, 502 U.S. 844, 112 S.Ct. 140, 116 L.Ed.2d 106 (1991); *Wilson v. Commonwealth*, Ky., 975 S.W.2d 901 (1998), *cert. denied*, 526 U.S. 1023, 119 S.Ct.. 1263, 143 L.Ed.2d 359 (1999). Moreover, a defendant is not entitled to an evidentiary hearing to simply fish for claims, and such is not warranted if the record resolves all issues raised in the RCr 11.42 motion. *Glass v. Commonwealth*, Ky., 474 S.W.2d 400 (1972); *Ford v. Commonwealth*, Ky., 453 S.W.2d 551 (1970).

The Rowan Circuit Court's denial of Appellant's motion for post conviction relief is affirmed.

LAMBERT, C.J., COOPER, GRAVES, JOHNSTONE, KELLER, and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents in a separate opinion.

STUMBO, Justice, dissenting.

Respectfully, I must dissent from affirmation of this RCr 11.42 case. The trial court denied the motion without first ordering an evidentiary hearing be held. In particular, I believe a hearing was necessary in regard to whether defense counsel's performance was deficient in failing to exercise all of the peremptory strikes permitted during the trial in chief. Failure to properly utilize this strike resulted in leaving on the jury a juror who served as a correctional officer at Eastern Kentucky Correctional Complex. Once the trial court denied the defense motion to strike her for cause, a peremptory challenge was the only way to remove her from the jury. Because the defense did not exercise all of

its peremptory challenges at the appropriate time, the error of leaving this juror in the panel could not be reviewed during the direct appeal. *Baze v. Commonwealth,* Ky., 965 S.W.2d 817, 825 (1997). The majority opinion now renders the merits of this issue impossible to ever address by holding that issues raised and disposed of on direct appeal are not the proper subject of review in an RCr 11.42 motion.

While the majority opinion purports to confront the merits of this issue, it does so without having heard from trial counsel. The lack of testimony from that counsel makes the majority opinion's discussion of the issue purely speculative, the very flaw it uses to dispose of Appellant's argument. I would reverse and remand to the trial court for an evidentiary hearing to explore the basis of trial counsel's failure to exercise the last peremptory strike to remove the juror from the jury panel.