RENDERED: JUNE 16, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0420-MR

CLIFFORD VICK                                                   APPELLANT

                    APPEAL FROM MUHLENBERG CIRCUIT COURT
v.                  HONORABLE BRIAN WIGGINS, JUDGE
                    ACTION NO. 19-CR-00059

COMMONWEALTH OF KENTUCKY                                        APPELLEE

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  COMBS, EASTON, AND ECKERLE, JUDGES.

ECKERLE, JUDGE:  Following convictions for trafficking in a controlled

substance (methamphetamine) in the first degree, possession of drug paraphernalia,

and being a persistent felony offender in the first degree (PFO I), the Muhlenberg

Circuit Court sentenced Appellant, Clifford Vick (Vick) to 20 years in prison.  The

Kentucky Supreme Court affirmed his conviction on direct appeal.  *Vick v.*

*Commonwealth*, No. 2019-SC-0489-MR, 2021 WL 1679582 (Apr. 29, 2021).

Vick then filed a post-conviction motion, which the Trial Court denied. He

appeals that denial. Having reviewed his claims and found no error, we affirm.

## BACKGROUND

The Kentucky Supreme Court detailed the facts underlying Vick's

convictions as follows:

> Mid-February 2019, two detectives with the Pennyrile Narcotics Task Force received a tip that Clifford Vick was selling drugs out of a motel in Central City, Kentucky. The next day, initiating surveillance of the motel, Detective Gibson was in the motel office and Detective Shoemaker was in the parking lot in an unmarked car when Vick left his motel room. Detective Gibson, alerted of Vick's movement toward the office by Detective Shoemaker, watched Vick walk to the brush line between the motel and an adjoining business and stop there. Detective Gibson turned away from him in an effort to remain undetected. After Vick returned to his room, the detectives decided to meet at a convenience store up the street from the motel. On the way, Detective Gibson inspected the brush line where Vick had stopped and retrieved a knotted yellow Dollar General bag that did not appear to have been outdoors long. Detective Gibson opened the bag once he was back in the car. The bag contained methamphetamine placed in a pink cell phone charger case; digital scales enclosed in a zipped case; green marijuana in a Gerber baby food jar; and napkins.
>
> In an effort to continue surveillance, the detectives got duplicate bags from the nearby Dollar General to replace the bag they had ripped open. On their way back to the motel, but before they were able to place a bag in the brush line, the detectives observed Vick walking up

the street. Vick was already past the brush line, so they decided to detain him. Vick was messaging on his mobile phone until then. Nothing was found on Vick when he was detained other than his cell phone.

Vick informed the detectives that his wife, Amber, was in the motel room. The detectives went to the motel and Amber consented to a search of the room. She gave the detectives a glass methamphetamine pipe and "roaches," the tips remaining from smoked marijuana cigarettes; the roaches were in a Gerber baby food jar just like the jar in the Dollar General bag containing the marijuana. The detectives also found napkins in the bathroom which matched those found in the Dollar General bag. Amber identified the items in the Dollar General bag and she spoke with the detectives about Vick.

After Vick was arrested, the detectives obtained a search warrant for the contents of Vick's cell phone, which contained text messages referring to drug trafficking. Some of the messages included Vick's name or nickname, and Amber identified herself in some transaction-related messages. Amber was not charged with any crimes relating to this case.

Vick was charged with trafficking in a controlled substance in the first degree, possession of drug paraphernalia, possession of marijuana and PFO I. The marijuana possession charge was dismissed without prejudice. A jury found Vick guilty of the remaining charges, and after finding Vick guilty of PFO I, recommended twenty years in prison on the trafficking offense. The trial court followed that recommendation and sentenced Vick accordingly.

*Id*. at *1-3 (footnotes omitted).

Following the Kentucky Supreme Court's affirmation of his sentence, Vick filed various, post-conviction motions, including a motion pursuant to RCr[1] 11.42, raising allegations of ineffective assistance of counsel. First, Vick claimed that his attorney's investigation was deficient for various reasons, including failing to proffer evidence of a motel receipt and investigate more thoroughly the initial police search for a "Clifford Boyd" before they discovered Vick. The allegations also purportedly resulted in a "falsified" search warrant naming Vick instead of "Clifford Boyd." Second, Vick claimed that counsel's performance at trial was deficient in failing to call witnesses and present a "legitimate" defense. Vick purports that his attorney should have presented an "innocent of the charges" defense, which is in reality an alibi defense, as he claims it was his wife, Amber Vick, who "was in possession and responsible for all items confiscated[.]" Also in his innocence or alibi defense, Vick claims that his counsel should have called two people that would have purportedly testified that they also were making drug deals on the cell phone found on Vick's person. Third, Vick claimed that his attorney's performance deviated from the standard because counsel's impeachment of Amber Vick was "inadequate." Vick believed that his counsel should have argued to the jury that Amber Vick "could have possibly been identified as the confidential informant in the first place in order to punish her husband for his infidelity as well

---

[1] Kentucky Rules of Criminal Procedure.

-4-

as that she was in fact the sole party responsible for the items found in the yellow bag." Vick also filed a motion for an evidentiary hearing on his RCr 11.42 claims.

On April 1, 2022, the Trial Court entered an Opinion and Order denying the RCr 11.42 motion and the motion for an evidentiary hearing, stating, in relevant part:

> First, the Defendant contends that his attorney "failed to adequately investigate the evidence that was used against him in this trial." Defendant's motion, at 5. In essence, the Defendant argues that his attorney was deficient because (a) he did not challenge the investigating officers' purported failure to positively identify the Defendant as the perpetrator of the crime(s) charged, and (b) he did not emphasize at trial what the Defendant has characterized as a discrepancy between the "location of arrest" noted on the uniform citation (which referenced Room 317 of the Caronada [*sic*] Motel) and the actual place where the Defendant was arrested (a gas station next to the motel).
>
> Regarding the supposed lack of "positive identification," the Defendant states that initially a confidential informant alleged that "a man named 'Clifford Boyd' was the individual that was at the hotel selling drugs." Defendant's motion, at 6. The Defendant goes on to indicate that, as the investigation progressed, the detectives began to suspect the Defendant Clifford Vick of criminal activity, "instead of pursuing Clifford Boyd any longer." *Id.*
>
> In presenting this outlandish argument, the Defendant conveniently fails to mention that at trial, in response to defense counsel's questioning, Detective Troy Gibson (who led the investigation) testified that (a) he knew the Defendant by sight and (b) he knew the Defendant went by the names "Clifford Vick" and "Clifford Boyd."

(Detective Gibson also indicated that he knew the Defendant's father, who was named "Clifford Boyd, Sr.")  In short, the Defendant's suggestion that his attorney was derelict by failing to pursue another possible suspect, "Clifford Boyd," is nothing more than a red herring, and a feeble one at that.  The record clearly indicates that "Clifford Boyd" and "Clifford Vick" are not different individuals, but one and the same person: the Defendant.

The Defendant also makes much of the fact that the uniform citation (attached to his motion as Exhibit E) references the "location of arrest" as Caronoda Motel, Room 317, while the officers' testimony at trial indicated the Defendant "was arrested at the Marathon gas station down the road from the motel." *Id*., at 7.  The Defendant has utterly failed to show that, had his attorney pursued this distinction more aggressively, the outcome of this case would have been different.  Consequently, his argument fails.

Second, the Defendant states that his attorney's performance was deficient and prejudicial because he "failed to call any witnesses or present any legitimate defense." *Id*., at p. 10.  In support of this contention, the Defendant again intentionally makes the patently false claim that "the identity of the target in the detectives' investigation . . . [was] a man *other* than movant."  As noted in the preceding paragraphs, Detective Gibson knew the Defendant by sight and knew that he went by both "Clifford Vick" and "Clifford Boyd."  The detectives did not begin their investigation pursuing some mysterious alternate perpetrator – they suspected that the Defendant was engaged in illegal drug trafficking, and their suspicions were ultimately confirmed.

The Defendant goes on to claim that "there was no absolute evidence ever presented as to any possession by movant of any items found in the brush line next to the motel."  This is false.  Detective Gibson testified that he

-6-

observed the Defendant walk from the motel to the aforementioned brush line and stop there, pause, and return toward the motel. Detective Gibson seized a plastic bag from the area of the brush line where the Defendant had just stopped. The bag contained methamphetamine and marijuana. The Defendant suggests his attorney was deficient because he did not convince the jury that there was "no reasonable proof that would even vaguely suggest that movant was responsible for the bag and its contents." *Id*., at 12. As the discussion above shows, this claim has no merit whatsoever.

The Defendant also claims his lawyer should have called "Jeffrey Dukes and Billy Groves, movant's friends, as witnesses." *Id*., at 13. He alleges that these potential witnesses had access to his phone and intimates that they may have been using it for illegal drug transactions. *Id*. As it is highly unlikely that Dukes and Groves would have admitted any of this on the witness stand, the decision not to pursue this line of defense can be characterized as sound trial strategy. It is in fact likely that Dukes and Groves would have further implicated the Defendant in illegal activities.

Lastly, the Defendant asserts that his attorney's failure to "impeach the testimony of Amber Vick during movant's trial" amounted to ineffective assistance of counsel. *Id*., at 16. This argument is untenable. On the night of the Defendant's arrest, the police questioned Amber Vick. At that time, she made a damning statement against the Defendant, accusing him of possessing the methamphetamine found in the brush line and implicating him in drug trafficking. At trial, however, Amber Vick stated she made this prior statement to the police because she was "on the verge of divorce because of . . . [the Defendant's] infidelity." *Id*. Obviously, Amber Vick made an effort during her trial testimony to refute her prior statement to the police. The jury simply did not believe her testimony. In the end, the Defendant

was not convicted because of his attorney's failure to impeach Amber Vick; he was convicted because the Commonwealth had overwhelming evidence evincing his guilt.

In order to prevail on a motion filed pursuant to RCr 11.42, the Defendant must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the Defendant so as to deprive him of a fair trial. *Strickland v. Washington*, 446 U.W. [sic] 668 (1980). As the above discussion shows, the Defendant has failed to meet either prong of the *Strickland* test.

Vick timely filed a notice of appeal and moved for appointment of counsel on appeal. The Department of Public Advocacy (DPA) reviewed the record and underlying claims and "determined that this 'post-conviction proceeding . . . is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense.'"[2] Accordingly, this Court permitted Vick to file a brief *pro se*. The Commonwealth then filed a responsive brief, and we now address the issues raised by Vick.

## ANALYSIS

Vick raises three issues on appeal: the Trial Court erred by finding his trial counsel's performance was not deficient for an alleged failure to investigate; the Trial Court erred by finding his trial counsel's performance was

---

[2] Citing to and quoting from Kentucky Revised Statutes (KRS) 31.110, which enables attorneys with the DPA to represent needy persons in certain circumstances.

not deficient for an alleged failure to call witnesses and present a defense; and the

Trial Court erred by denying his request for an evidentiary hearing.

The Kentucky Supreme Court has laid out the following standards for

our review of ineffective assistance of counsel claims:

> We evaluate ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), adopted by this Court in *Gall v. Commonwealth*, 702 S.W.2d 37 (Ky. 1985). Under the *Strickland* framework, an appellant must first show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052. A "deficient performance" contains errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, the appellant must show that counsel's deficient performance prejudiced his defense at trial. *Id.* "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* An appellant must satisfy both elements of the *Strickland* test in order to merit relief. *Id.*
>
> When faced with an ineffective assistance of counsel claim in an RCr 11.42 appeal, a reviewing court first presumes that counsel's performance was reasonable. *Commonwealth v. Bussell*, 226 S.W.3d 96, 103 (Ky. 2007) (*quoting Haight v. Commonwealth*, 41 S.W.3d 436, 442 (Ky. 2001), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009)). We must analyze counsel's overall performance and the totality of circumstances therein in order to determine if the challenged conduct can overcome the strong presumption that counsel's performance was reasonable. *Haight*, 41 S.W.3d at 441-42. In addition, the trial court's factual findings and determinations of witness credibility are granted deference by the reviewing court. *Id.* Finally, we apply the de novo

standard when reviewing counsel's performance under *Strickland*. *Bussell*, 226 S.W.3d at 100.

*Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016).

When a Trial Court does not hold an evidentiary hearing on an RCr 11.42 motion, "appellate review is limited to 'whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction.'" *Haley v. Commonwealth*, 586 S.W.3d 744, 750 (Ky. App. 2019) (quoting *Lewis v. Commonwealth*, 411 S.W.2d 321, 322 (Ky. 1967)). "A hearing is required if there is a material issue of fact that cannot be conclusively resolved, *i.e.*, conclusively proved or disproved, by an examination of the record." *Fraser v. Commonwealth*, 59 S.W.3d 448, 452 (Ky. 2001) (citing *Stanford v. Commonwealth*, 854 S.W.2d 742, 743-44 (Ky. 1993), *cert. denied*, 510 U.S. 1049, 114 S. Ct. 703, 126 L. Ed. 2d 669 (1994); and *Lewis*, 411 S.W.2d at 322). *See also* RCr 11.42(5).

With these standards in mind, we turn to Vick's appellate issues.

I.   **Hotel receipt.**

Vick first argues that his trial attorney's performance was deficient because he did not at trial introduce a receipt from the Caronoda Motel that Vick proffers shows he was staying in rooms 308 and 312, and not room 317. The Trial Court's order does not specifically address this aspect of the claim, but it does reject Vick's claim that his counsel failed to investigate. Regardless, we review

-10-

the two *Strickland* elements *de novo*, and under that review, we have found no error.

Vick claims that his trial counsel did not present a receipt from the hotel showing that he had been staying in rooms 308 and 312, and not 317. Vick avers that this evidence "had always been available in the record[.]" Appellant's Brief at 11. Vick argues that his connection to room 317 was critical because the items found in room 317 were similar to the items found in the brush line outside of the motel in a bag that the Commonwealth alleged Vick had possessed.

The Commonwealth responds that even assuming without admitting that if Vick's counsel made a less than complete investigation, his counsel still made a reasonable investigation and decision that was not deficient because counsel presented a thorough alibi or innocence defense, and the receipt did not "preclude [Vick's] presence in the room, use of the room, or possession or use of drugs in the room." Appellee's Brief at 8. We agree.

While trial counsel has a duty to make reasonable investigations and reasonable decisions about what investigations to pursue, trial counsel does not have to make an "investigation that the best defense lawyer, blessed not only with unlimited time and resources but also with the inestimable benefit of hindsight, would conduct." *Baze v. Commonwealth*, 23 S.W.3d 619, 625 (Ky. 2000),

*overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009) (citations omitted).

Here, it is apparent from the trial that counsel made reasonable investigations into the evidence. Counsel thoroughly presented Vick's alibi defense. Counsel cross-examined the Commonwealth's witnesses, getting the officers to admit that the confidential informant never identified the seller of the drugs, that there was never a sale of drugs recorded on video, and that Vick was never seen in possession of any items found in the brush line. Further, Vick's wife, Amber, who was found by the officers in room 317, denied that Vick was staying in room 317. She claimed any incriminating statements she made about Vick when the officers arrived at room 317 were due to a constellation of issues – she was "high as hell," having taken a half-dozen drugs and not slept over the previous few days, she was naked, and she was vengeful because Vick had been engaging in extra-marital relations.

Additionally, we have reviewed the hotel receipt, which Vick attached as Exhibit D to his RCr 11.42 motion, and we note that of the two rooms listed as Vick's on the receipt, one is 308 and the other appears to be 317. While the "7" in 317 is admittedly not clear, there are numerous handwritten twos and sevens on the document, and the number more closely resembles the other handwritten sevens than it does the handwritten twos. Given the ambiguity, the evidence was

-12-

potentially *inculpatory* and could have worked against Vick's innocence or alibi defense. Accordingly, the Trial Court did not err by finding no deficient performance on this issue.

Finally, if it were deficient performance to fail to introduce the receipt, that deficiency did not result in prejudice. Vick's trial counsel thoroughly presented an innocence or alibi defense, which the jury rejected. This one additional piece of evidence, which is potentially inculpatory, did not result in a "likelihood of a different result [that was] substantial, not just conceivable." *Commonwealth v. Pridham*, 394 S.W.3d 867, 876 (Ky. 2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 792, 178 L. Ed. 2d 624 (2011)). The Trial Court properly denied Vick's motion on this claim.

## II.    Cell phone.

Vick next argues that his counsel's performance was deficient because counsel did not call two witnesses to testify that they had also been using the cell phone found on Vick. The cell phone contained numerous messages indicating the cell phone's user had been trafficking in drugs. Vick claims that this phone, which was on his person when arrested, was a communal phone used by others.

The Commonwealth responds that Vick's counsel's performance was not deficient because he thoroughly cross-examined the witnesses about the cell phone. Specifically, one of the investigating officers admitted that at least two

-13-

people had been using the phone, that he could not say that the texts came from

Vick, and that even with Vick's name on the texts that he could not verify that

Vick sent the messages. Notably, Amber Vick admitted that she also had used the

cell phone. Moreover, the Commonwealth argues that even had trial counsel

attempted to call witnesses to testify that they had used the cell phone, those

witnesses likely would have invoked their rights to remain silent and not testify

against themselves. *See* Amendment 5 to the United States Constitution, and

Section 11 of the Kentucky Constitution. We agree.

Having reviewed the trial and counsel's performance, we cannot find

any deficient performance regarding calling additional witnesses to testify about

the cell phone. The cell phone was found on Vick's person and contained

incriminating text messages. To distance Vick from the messages, counsel artfully

elicited testimony of multiple witnesses including Vick's wife and the

investigating officers, all of which admitted at least one other person was using the

phone. Given the overwhelming evidence against Vick, the jury rejected his alibi

defense, and the scale would not have tipped in Vick's favor if two additional

witnesses (who probably would not self-incriminate) presented echoes of already-

elicited testimony. *See, e.g.*, *Commonwealth v. Searight*, 423 S.W.3d 226, 232

(Ky. 2014) (not ineffective to fail to call witness who, among other reasons, would

have provided testimony cumulative of that already presented at trial).

Moreover, "[d]ecisions relating to witness selection are normally left to counsel's judgment and this judgment will not be second-guessed by hindsight." *Foley v. Commonwealth*, 17 S.W.3d 878, 885 (Ky. 2000), *overruled on other grounds by Stopher v. Conliffe*, 170 S.W.3d 307 (Ky. 2005) (citation omitted). This platitude holds especially true here where the witnesses would likely have invoked their right to remain silent and not be compelled to testify against themselves.

Accordingly, Vick's counsel's performance was not deficient. Additionally, given the likelihood that the purported witnesses would have elected not to testify, Vick was not prejudiced by their non-testimony. Thus, the Trial Court properly denied Vick's motion for post-conviction relief.

## III. Evidentiary hearing.

Finally, Vick argues that the Trial Court erred by denying his motion for an evidentiary hearing regarding the aforementioned two potential witnesses. Because the issue is conclusively refuted by the face of the record, the Trial Court did not err by denying the motion for an evidentiary hearing. *Haley*, *supra*; *Fraser*, *supra*. Accordingly, we affirm the Trial Court's order on this claim.

### CONCLUSION

Having thoroughly reviewed the trial, we hold that Vick did not suffer from counsel who was laboring under *Strickland* deficient performance.

-15-

Additionally, we hold that Vick suffered from no *Strickland* prejudice from any of counsel's alleged errors. Accordingly, we AFFIRM the Trial Court's order denying the RCr 11.42 motion and the motion for an evidentiary hearing.

ALL CONCUR.

BRIEF FOR APPELLANT:

Clifford Vick, *pro se*
Fredonia, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Matthew F. Kuhn
Solicitor General

Rachel A. Wright
Assistant Solicitor General
Frankfort, Kentucky