**COMMONWEALTH of Kentucky, Appellant,**

v.

**Howard E. BASNIGHT, Appellee.**

**Howard E. BASNIGHT, Cross–Appellant,**

v.

**COMMONWEALTH of Kentucky, Cross–Appellee.**

**No. 87–CA–479–MR.**

Court of Appeals of Kentucky.

Feb. 3, 1989.

Withdrawn and Rendered May 5, 1989.

Richard L. Receveur, Louisville, for appellee/cross-appellant.

Frederic J. Cowan, Atty. Gen., Valerie L. Salven, Asst. Atty. Gen., for appellant/cross-appellee.

Before COMBS, McDONALD and WEST, JJ.

McDONALD, Judge.

This is an appeal and cross-appeal testing the appropriateness of the circuit court's grant of partial relief to Howard E. Basnight, pursuant to his RCr 11.42 motion for post-conviction relief, and Basnight's cross-appeal demanding relief from all of his convictions.

The matters under consideration are complex and confusing, so it will be necessary for us to devote more than the ordinary time and space for a thorough understanding of the facts of this unusual case.

### Procedural Background

On October 14, 1980, a jury returned the following verdicts of guilty convictions against Howard E. Basnight and fixed the attendant sentences for him to serve in the penitentiary:

sodomy, first degree, of N.C., 25 years;
sodomy, second degree, of N.C., 9 years;
sodomy, third degree, of N.C., 5 years;
sexual abuse of N.C., 5 years;
sexual abuse, first degree, of H.M., 5 years;
sodomy, second degree, of C.C., 7 years;
sodomy, third degree, of C.C., 3 years; and
distribution of obscene matter to a minor, G.S., 12 months.

On November 11, 1980, after the circuit court merged and ran some of the convictions together, Basnight was sentenced to serve a total of 37 years in the penitentiary.

Basnight filed a matter of right appeal directly to the Supreme Court of Kentucky because the sentence was for more than twenty years. The Supreme Court, in an unpublished memorandum opinion, on June 15, 1982, unanimously affirmed the final judgment and sentence of imprisonment of Basnight.

During 1985 a civil action for tortious damages was tried against Basnight which was filed on behalf of N.C. by his parent and next friend. The action was dismissed based upon the testimony of N.C. who was a reluctant witness on his own behalf. N.C.'s civil trial testimony did not substantiate anal intercourse, only attempts thereat (he could not remember) by Basnight which led to the dismissal of the civil action.

### RCr 11.42 Proceeding

Coming off the success of the dismissal of the civil action and being armed with apparent repudiation of prior testimony, Basnight moved for relief from the original criminal judgment by means of an RCr 11.42 motion filed December 19, 1985. Basnight's verified motion, as we glean from it, related the following grounds for relief:

1. Mrs. Norma Bennett was not called as a witness by defense counsel to show the victims were lying and were just trying to extort money.

2. Prosecutors met with victims before trial on several occasions. Leading questions by prosecutors were objected to by defense counsel but overruled by the circuit court based on the age of the children.

3. The civil jury trial on August 15, 1985, exonerated appellant of deviate sexual conduct. N.C. denied deviate sexual intercourse.

4. Prosecutors were intent on manufacturing evidence by pressuring, inducing or encouraging children to testify to criminal sexual acts.

5. The testimony of Jack Boone was contrived.

6. The trial court erred in not admitting Norma Bennett's rebuttal testimony.

7. Jack Boone's testimony was orchestrated along with the perjured testimony of the youthful prosecuting witnesses.

### Factual Background

Howard Basnight, a retired serviceman, became an elementary school teacher in 1974 at Byck Elementary School, an inner-city public school in Louisville. There were four children named in the indictment, some in the fourth grade and as young as ten years of age at the time of these criminal offenses. Other children testified as witnesses against Basnight but were not named in the indictment.

This sequence of factually conflicting events began when Beverly Barnett, on behalf of one of the children, tried to extort money ($2,000) from Basnight by a letter of November 30, 1979, threatening public exposure. Basnight refused the "shake-down" and reported the matter to his supervisor. Subsequently, the Jefferson County Attorney was notified by another person which then led to an investigation by the Board of Education and the Commonwealth's Attorney's office. The multicount indictment was returned on March 25, 1980.

The primary victim of Basnight's acts was N.C., a ten-year-old fourth-grade student. His testimony in the criminal trial was described by the Commonwealth in its brief as follows:

[N.C.], the victim of instances of sodomy and sexual abuse committed over a span of several years, testified that he returned to visit Basnight often after he graduated from Byck. He testified that Basnight would engage in oral sodomy with him, and would "jack off." Basnight also rubbed [N.C.'s] penis with his hands. [N.C.] testified that Basnight once put "his penis in my butt," although he could not remember when this oc-

curred other than that he was in middle school at the time.

[N.C.] testified that when he was in the fifth grade, and ten years old, he engaged in act of oral sodomy upon Basnight, for which Basnight gave [N.C.] five dollars ($5.00). In his description of this activity, [N.C.] indicated that Basnight ejaculated in his mouth; [N.C.] spit the fluid out in a nearby sink. On other occasions, Basnight showed [N.C.] Playboy magazines and what [N.C.] termed "army pictures"—men in army clothes "playing around with girls."

The other evidence against Basnight, in addition to N.C.'s testimony, was varied, overwhelming and explicit.

After Basnight was sentenced to prison, the civil trial against him was held. During that trial N.C. refused to testify to any act of anal intercourse with Basnight. The civil case was dismissed. The failure to testify about anal intercourse during the civil trial became the primary focus of Basnight's claim for relief in the RCr 11.42 hearings, the allegation being that N.C. had perjured himself in the criminal trial. An additional issue was lodged about a matter which had been addressed in the Supreme Court's opinion concerning the testimony of Norma Bennett and Jack Boone in the criminal trial. However, a new allegation developed which ended up in a charge of prosecutorial misconduct against the two Basnight prosecutors.

### The Norma Bennett–Jack Boone Issue

It was alleged in the direct appeal to the Supreme Court that the circuit court erred in not permitting Norma Bennett to rebut the rebuttal testimony of Jack Boone,[1] an adult book store owner, because she had violated the separation of witness rule under RCr 9.48. The scenario is as follows:

During the criminal trial Basnight took the stand in his own defense. In essence, he denied all the charges in the indictment, even the possession of a Playboy magazine. Co-prosecutor William Knopf, on cross-examination asked Basnight if he had ever

---

1. Efforts from both parties have failed to locate Jack Boone since the criminal trial. It was asserted that he absconded because of problems with the Internal Revenue Service.

been in a store that sells Playboy or pornographic material and he replied "no." [2] At this moment the court reporter needed a break in order to change her steno tape.

Meanwhile, Jack Boone was outside the courtroom while Basnight was on the stand. Boone, a peddler of amatory and scatological material, operated an adult bookstore in Louisville. He was at the courthouse to pay a fine for someone, and at the same time wanted some information about a case Mr. Knopf was prosecuting for him over a forged instrument in his business.

In explaining the circumstances in the criminal trial before the circuit court, Prosecutor Knopf testified (out of the presence of the jury) as follows:

Q And do you know a witness who previously testified by the name of Mr. Boone?

A Yes, I do.

Q And are you involved in any litigation with this witness?

.    .    .    .    .

The allegation was that Mr. Sands passed a forged $20 bill to Mr. Jack Boone at his store. That case was tried before a jury in circuit court before Judge Oldham, and resulted in a hung jury, and the case was then reset for trial on November 11th 1980.

.    .    .    .    .

Q And when was the last time that you had, prior to today, communicated with Mr. Boone?

A The last time that I talked with Mr. Boone was the day after Mr. Sands jury trial, at which time I communicated to him that there was a hung jury and I gave him the new trial date, and if I may have a minute I can give you that date.

.    .    .    .    .

A Yes, to November 11, 1980. Both of the charges against Mr. Sands are set for trial that day.

Q Have you talked to Mr. Boone today?

A Yes, I have.

Q Would you tell us the circumstances leading up to that conversation.

A During the cross examination of the defendant, Howard Basnight.

Q Who was conducting that cross examination?

A I was conducting the cross examination and I elicited testimony from Mr. Basnight that he had never been in an adult bookstore or porno shop in the last five years.

Soon after that testimony I remember that his Honor took a break and I stepped outside and to my utter surprise I saw Mr. Jack Boone. And as I testified earlier I have not seen him since the day after the trial of Mr. Sands.

I have never talked to Mr. Jack Boone at all about this case. When I saw him I was terribly surprised because I knew that he is the—I have never been in an adult bookstore before. Mr. Boone is the only one that I know of who is in the adult bookstore business, and I just felt that if there's a good person to ask Mr. Boone would be, and I asked him—at that time Mr. Basnight was still on the witness stand—and I asked Mr. Boone to look in the courtroom and see if there was anybody he recognized, at which time he indicated to me that he recognized the person on the witness stand.

I asked him if he knew who that person was and he said he does not know his name but he does recognize his face as being a customer in his bookstore.

.    .    .    .    .

Q And did you ask Mr. Boone if he would be willing to testify in these proceedings?

A Yes, I did.

Now, we address the controversy with Norma Bennett. She is a friend of Basnight and had been sequestered in the courthouse hallway as a potential witness for four or five days. When the court reporter's break occurred, defense counsel informed Ms. Bennett she would not be

**2.** There was no objection asserted by defense counsel to this question because he felt it was relevant to the charge of distribution of obscene material to a minor.

called as a witness. Basnight's counsel explained:

[S]he could have put his reputation in issue by some of her responses.... I believe that they had some evidence that would have been, would have become admissible, and that would have been damaging, and that was one of the reasons I didn't put her on.

Norma Bennett then went into the courtroom as a spectator and listened to the testimony of Jack Boone who testified as follows:

Q. ... look out in the courtroom and tell the jury if you can identify anyone as someone who you have seen come in your book store.

A. Yes sir, the gentleman seated at the far right on the defense table in the blue suit with glasses.

.    .    .    .    .

A. This gentleman here (pointing to Mr. Basnight.) On cross examination, he testified:

Q. When were you first contacted by anyone and questioned as to whether you knew anything about this defendant?

A. I had stopped outside—by accident this morning I came up to the courthouse this morning to pay somebody's fine that had gotten in a little hassle in one of my bars last night.

The individual hadn't showed for court so I went wandering around the hall here and stopped to talk to Mr. Woody ... and I happened to glance through the window just after glancing through here and standing out there talking to him and waiting a few minutes more to see if the individual showed up for court, Mr. Knopf walked up and asked me if I knew the gentleman that was seated on the stand, had I ever seen him, and I said yes.

Q. He just came up and asked you that out of the clear blue sky?

A. I've known Mr. Knopf before, and he also knew I was an adult bookstore owner.

Q. He was sitting on the stand was he when you looked at him?

A. The gentleman was seated on the stand, yes, sir.

.    .    .    .  .    .

Q. Where did you run into Mr. Knopf?

A. Outside in the corridor.

At this point, Norma Bennett, hearing Boone's testimony, offered her own rebuttal testimony to Basnight's defense counsel. Her testimony was excluded but preserved by avowal, and it was as follows:

COURT: What was your conversation with this person [Boone]?

A. Well, I was sitting outside and he [Boone] kept wandering around out there looking in the window, sitting around, and I went over there and I looked in the window and he said, "How long has this been going on like this?" I said, "For three or four days." And he said, "Are you a witness?" And I said, "No, sir, I'm not. I'm a friend of the Basnight family." He said, "Well I don't know anything about the man or the case." He said, ["]I'm just here."—like that.

And I kept looking at him and I got up and I moved away and he kept hanging around there and I noticed this piece of paper. He had a folder in his hand and I saw at one time he had clippings in it. And on the outside of the folder he had a piece of white paper with the prosecutor's name printed on it.

COURT: What name?

A. Norf (Phonetically spelled). K-n-o-r-p-h.

COURT: K-n-o-r-p-h?

A. Yes, Huh-huh. It was a piece of white paper and he had that holding it on the outside of the folder.

COURT: Did it have just one name on it?

A. Yes, sir. And about that time Court recessed and this gentleman came out and spoke to him then.

The circuit court ruled that she could not testify because she had violated the sequestration rule, RCr 9.48. This ruling was asserted error presented to the Supreme Court in the direct appeal, and the highest Court, in holding that the ruling was a harmless error, said:

Norma Bennett's testimony did not impeach Jack Boone. She testified that Boone did not know anything about the man or the case. Boone himself made it clear that he didn't know Basnight by name or know anything about him. He merely recognized Basnight's face. Knopf and Boone both swore in chambers that the meeting was strictly coincidental. Boone explained that he did have a file folder containing information on various legal actions in which he and his company were involved. He always carried the entire contents with him. Knopf's name was written on several papers involving the earlier case in which Boone had been a witness. Defense counsel recalled Boone to the witness stand and exhaustively questioned him about the paper with Knopf's name on it. Therefore the jury was fully informed of the coincidental meeting and circumstances surrounding it. Norma Bennett's testimony would have added nothing.

The high Court's ruling is the law of the case on any substantive issue Basnight may have concerning the Norma Bennett–Jack Boone testimony.

However, now the case develops a new twist with prosecutorial misconduct arising as an issue although it was not explicitly alleged in the RCr 11.42 motion. It developed in this manner: When Basnight filed his RCr 11.42 motion, after the dismissal of the civil suit of N.C., the depositions of the two prosecutors were taken. The Commonwealth, in defending the criminal verdicts, is confronted with possible recanted testimony of its primary witness. Prosecutor William Knopf, now a District Court Judge, gave a deposition which reflected no new revelations. However, John Stewart, the co-prosecutor, while being deposed some five years later and since having handled over 100 jury trials, made the following statements to questions he was not prepared to discuss:

A. ... I think at that time Mr. Boone was a prosecution witness in another charge that Mr. Knopf was prosecuting. And I believe that Mr. Knopf advised me way before the trial that this person was a prosecuting witness in this other case. And I think that was my only knowledge of Mr. Boone at that time.

Q. ... did you discuss ... Boone [before the trial]?

A. I really don't recall ... I remember we was discussing whether or not we wanted to utilize Playboy information and some other information that we had gathered during our investigation tending to show that Mr. Basnight at least had some familiarity with pornographic literature.

Q. ... how did Mr. Boone come up in the discussions of the Basnight case at all?

A. I don't really remember to the extent at this point that I would be willing to swear to an answer. But we used to have regular staff meetings, at which we would discuss our cases and I believe that—I don't really recall when Mr. Boone's name came up. *I was aware on the day that we started the trial that Mr. Boone was available.* [emphasis added]

Q. O.K. Did you know Mr. Boone to see him or recognize him?

A. I had never seen him before in my life.

The above testimony launched the new charge of prosecutorial misconduct on the part of the two prosecutors: that of manufacturing a witness, Jack Boone.

Subsequently, however, Mr. Stewart, at a second evidentiary hearing on Basnight's motion, testified that he had reviewed his trial notes and that Mr. Boone was not listed as a witness in his order of proof, and that upon further refreshing his recollection, Mr. Boone was not known by him to be a witness that day. He said further that he was in error when he said previously, "I was aware on the day that we started the trial that Mr. Boone was available."

### Circuit Court Ruling

The circuit court, in two separate orders, ruled that Basnight's complaint of ineffective assistance of his defense counsel for failing to call Norma Bennett to testify was

reasonably explained, and such failure did not amount to ineffective assistance of counsel. No evidence was offered otherwise. In fact, we are of the opinion that the claim of ineffective assistance of counsel was abandoned; therefore, the circuit court is affirmed in this regard.

The circuit court granted Basnight partial relief by setting aside the convictions which rested upon the testimony of N.C., with other circumstances, and reasoned that it did so because:

1. There was a discrepancy in the testimony of N.C. at the criminal trial and then at the civil trial. The circuit court noted, "In fact ... he testified that he did not testify about anal intercourse during the civil proceeding because he did not want to lie under oath before the jury. The court does note that he testified that there was an attempt at anal intercourse."

2. It was concerned about the exclusion of Norma Bennett's testimony along with the Supreme Court's characterization of its exclusion as being harmless error.

3. The third circumstance, compounding the rest, is the glaring inconsistency between the testimony of Prosecutor Knopf and Jack Boone with the testimony of Co-prosecutor John Stewart, taken by deposition, stating that Boone, to his knowledge, was available to testify on the first day of trial.

In a subsequent order, entered February 17, 1987, the circuit court found:

It should be made clear that this writer [the circuit court] does not find ... that the prosecutors fabricated evidence or changed testimony between the time of the videotaped deposition and the latter hearing which was videotaped on December 15, 1986. However, the Court has grave concerns over the cumulative effect of the various errors previously noted and the possible *appearance* of impropriety which may emerge from a viewing of the video depositions.

Therefore, ... [Basnight] is entitled to the extraordinary relief available in RCr 11.42 on his convictions directly related to the victim, [N.C.].

.  .  .  .  .

... [Basnight] is granted a new trial on said charges.

The Commonwealth appealed the ruling as it related to the offenses committed against N.C., and Basnight cross-appealed the denial of relief from the convictions relating to the victims H.M., C.C.[3] and G.S.

### Conclusion

We reverse the circuit court's final order and thereby deny Basnight the relief granted by the circuit court and, further, we deny Basnight the relief he seeks on his cross-appeal.

Let us begin by first stating that the relief sought by the RCr 11.42 motion must by nature be a collateral attack upon the judgment or sentence, as contrasted with a direct attack. A direct attack is made within the same action as the judgment or on its appeal. A collateral attack will impeach a judgment or sentence by an independent action, but other than in the action in which the judgment or sentence was rendered, or its appeal. Constitutional grounds must form the basis upon which relief can be granted by collateral attack. *Com. v. Wine*, Ky., 694 S.W.2d 689 (1985), says it best:

We conclude further that RCr 11.42 is designed to permit a trial court an opportunity after entry of judgment to review its judgment and sentence for constitutional invalidity of the proceedings prior to judgment or in the sentence and judgment itself. It is not an appropriate remedy for a frustrated appeal.

It is clear from our case law that the RCr 11.42 procedure is not designed to give a convicted defendant an additional appeal or a review of trial errors that should have been addressed upon the direct appeal. A trial error asserted in an RCr 11.42 motion must rise to the level of a constitutional deprivation of due process. *See* Haynes, *Kentucky Jurisprudence*, Criminal Procedure, Rule 11.42 (1985) for a

---

**3.** C.C. was deceased by the time this RCr 11.42 motion was heard.

worthwhile and succinct discussion of relevant cases.

■ The issue raised over the civil lawsuit testimony of N.C. contradicting his criminal trial testimony and thereby exonerating Basnight is not a justiciable issue for our consideration because perjured testimony will not be a basis for impeaching a jury verdict in an RCr 11.42 proceeding. *Fields v. Commonwealth*, Ky., 408 S.W.2d 638 (1966), addressed the perjured testimony issue thus: "The main ground upon which Fields sought relief was that he was convicted on perjured testimony.... The asserted ground is not one on which relief is available under RCr 11.42." The rule pronounced in *Fields* was reaffirmed in *Hendrickson v. Commonwealth*, Ky., 450 S.W.2d 234 (1970).

■ Basnight argues that the perjured testimony rule in *Fields* has outlived its usefulness and should be abandoned. We are not so persuaded by the argument, but more importantly, we have no authority to change or disregard the Supreme Court's precedent. Also for consideration on this point, there was no finding of fact that the testimony was perjured, only that there was a discrepancy. Yet, the circuit court did find that N.C. testified about an attempt at sodomy, and an attempt would be sufficient under *Hulan v. Commonwealth*, Ky., 634 S.W.2d 410 (1982). However, in this RCr 11.42 hearing, N.C., in his explanation of the testimony given at the civil trial, said he was "trying to forget everything."

Later in the same hearing, under oath, N.C. settled the issue, in response to an inquiry of the circuit court, stating:

The Court: You can say anything you want to say.

[N.C.]: Why would this man want to get out of jail when he [Basnight] knows he is guilty of everything he done. I wouldn't get up here and tell no lie. That's all I've got to say.

■ On the issue of excluding Norma Bennett's testimony, we are confused by the circuit court's finding (actually, it was no finding). Regardless, the determination of harmless error was in relation to the application of witness sequestration, RCr 9.48. The Supreme Court said the sequestration rule was misapplied by the circuit court. However, the substantive nature of the Supreme Court ruling was that Bennett's testimony did not impeach the testimony of Jack Boone. This is the law of the case and is not subject to further review by us. *Siler v. Williford*, Ky., 375 S.W.2d 262 (1964), limits our review thus: "When an appellate court decides a question concerning evidence ... the question of law settled by the opinion is final...." Boone's testimony is as unimpeached today as it was when the Supreme Court declared it so, and there is no finding by the circuit court to the contrary.

Lastly, and we believe, the heart of the matter of the circuit court's final order was its "grave concerns over the cumulative effect of the various errors previously noted and the possible appearance of impropriety which may emerge...." RCr 11.-42(6) requires the circuit court to make findings determinative of the material issues of fact. The final order alludes to various errors but does not specifically state them. In the same breath the circuit court mentions the possible appearance of impropriety. However, impropriety or the appearance thereof does not rise to the level of deprivation of a constitutional right. We believe the circuit court did what it believed to be equitable and fair; but that is not a basis for RCr 11.42 relief. *See Nicholson v. Judicial Retirement & Removal Comm'n*, Ky., 573 S.W.2d 642 (1978). The circuit court found no prosecutorial misconduct nor do we. Also, we do note the patience and professionalism exercised by the circuit court in this lengthy case.

For the reasons expressed herein, we reverse the circuit court's order vacating the 25–years sentence of Basnight on the direct appeal. We affirm the circuit court's order on the cross-appeal, thereby not disturbing Basnight's sentences addressed therein.

WEST, J., concurs.

COMBS, J., dissents.[4]

---

4. Judge Combs indicated his dissent from the decision announced in this opinion prior to his resignation from this Court to accept election to the Supreme Court of Kentucky.