James Ray JOHNSON, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2004–CA–001960–MR.

Court of Appeals of Kentucky.

Dec. 2, 2005.

496

James Ray Johnson, Central City, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Dennis W. Shepherd, Assistant Attorney General, Frankfort, KY, for appellee.

Before HENRY and VANMETER, Judges; MILLER, Senior Judge.[1]

*OPINION*

VANMETER, Judge.

James Ray Johnson appeals from the Ohio Circuit Court's denial of his motion to vacate its judgment of conviction and sentence pursuant to RCr 11.42 and his motion for the trial judge's recusal. For the following reasons, we affirm.

Pursuant to a search warrant, the Ohio County Sheriff's Department searched Johnson's home. Based upon several items seized during the search, Johnson was indicted on August 10, 2000 of the following counts: possession of drug paraphernalia, possession of marijuana, trafficking in a controlled substance (methamphetamine), possession of a handgun by a convicted felon, and trafficking in marijuana within 1000 yards of a school. A trial commenced on June 26, 2001, and at the close of all of the proof, the court dis-

missed the count of trafficking in marijuana within 1000 yards of a school. Ultimately, the jury found Johnson not guilty of trafficking in methamphetamine but guilty of the lesser-included offense of possession of methamphetamine, as well as the remaining indicted counts. The court accepted the jury's recommended sentence and sentenced Johnson to serve five years for possession of marijuana, five years for possession of drug paraphernalia, and ten years for possession of methamphetamine, to run consecutively, for a total of twenty years.[2] Johnson appealed to the Kentucky Supreme Court, which affirmed after reviewing the following issues:

> (1) failing to instruct the jury on the "beyond a reasonable doubt" standard with respect to the firearm enhancement issue; (2) failing to dismiss the enhancement issue because of insufficiency of the evidence to prove his possession of a firearm; (3) allowing the Commonwealth to play a videotape of the execution of the search warrant and his arrest; (4) failing to sufficiently cure the Commonwealth's reference to his prior guilty plea in another case; (5) failing to properly instruct the jury on the drug paraphernalia charge; and (6) allowing the Commonwealth to amend the indictment with respect to the charge of trafficking in methamphetamine.[3]

On August 18, 2004, Johnson filed *pro se* motions to vacate the court's judgment of conviction and sentence pursuant to RCr 11.42, and to recuse the trial judge, the Honorable Ronnie C. Dortch. The trial court overruled Johnson's RCr 11.42 motion, stating that his "allegations were or

---

1. Senior Judge John D. Miller sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. All three of these counts were enhanced by the gun possession count; further, Johnson was given the maximum sentence for each count.

3. *Johnson v. Commonwealth,* 105 S.W.3d 430, 433 (Ky.2003).

should have been raised in his direct appeal and that the allegations relating to an ineffective assistance of counsel are without substance." The trial court further overruled Johnson's motion for recusal. This appeal followed.

### I. Denial of RCr 11.42 Relief

Johnson contends that the trial court erred when it denied his RCr 11.42 motion without holding an evidentiary hearing. We disagree. An evidentiary hearing is not required to consider issues refuted by the trial court record.[4] Because the trial court denied Johnson's RCr 11.42 motion without a hearing, "our review at this time is confined to 'whether the [RCr 11.42] motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction.' "[5] Accordingly, we must first determine whether the alleged errors entitle Johnson to relief under RCr 11.42.[6]

▮▮ The purpose of RCr 11.42 is to provide defendants with a means to obtain relief for errors that "rise to the level of a constitutional deprivation of due process."[7] It is not a "substitute for appeal nor does it permit a review of all of the alleged trial errors."[8] Further, we will not disturb the trial court's decision unless it is clearly erroneous.[9] Johnson alleges many instances of ineffective assistance of counsel in support of his claim that the trial court improperly denied his RCr 11.42 motion without an evidentiary hearing. In analyzing these alleged errors, we are compelled to follow "[t]he two-pronged test for ineffective assistance of counsel . . . (1) whether counsel made errors so serious that he was not functioning as 'counsel' guaranteed by the Sixth Amendment, and (2) whether the deficient performance prejudiced the defense."[10] In essence, "[c]ounsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won."[11]

▮▮ Johnson's first allegation is that his attorney, Jason Pfeil, did not properly investigate the matter. In support thereof, Johnson asserts that Pfeil did not interview several potential witnesses, including David Stewart, who Johnson contends brought into his home the gun that the police found.[12] The record, however, discloses that Johnson's daughter testified

---

**4.** *Haight v. Commonwealth*, 41 S.W.3d 436, 442 (Ky.2001); *Bowling v. Commonwealth*, 981 S.W.2d 545 (Ky.1998); *see also Fraser v. Commonwealth*, 59 S.W.3d 448, 452 (Ky.2001) (court holding that the motion may be summarily dismissed if it fails to specify grounds and supporting facts which justify relief).

**5.** *Baze v. Commonwealth*, 23 S.W.3d 619, 622 (Ky.2000) (citing *Lewis v. Commonwealth*, 411 S.W.2d 321, 322 (Ky.1967)).

**6.** *Hodge v. Commonwealth*, 68 S.W.3d 338, 342 (Ky.2001).

**7.** *Commonwealth v. Basnight*, 770 S.W.2d 231, 237 (Ky.App.1989).

**8.** *Harris v. Commonwealth*, 441 S.W.2d 143, 144 (Ky.1969).

**9.** *Robbins v. Commonwealth*, 719 S.W.2d 742, 744 (Ky.App.1986), *overruled on other grounds by Norton v. Commonwealth*, 63 S.W.3d 175 (Ky.2001).

**10.** *Fraser v. Commonwealth*, 59 S.W.3d 448, 456–57 (Ky.2001) (citing, *inter alia, Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).

**11.** *Foley v. Commonwealth*, 17 S.W.3d 878, 884 (Ky.2000) (quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992)).

**12.** Less notably, Johnson wanted Pfeil to interview Tony and Brenda Stevens and Ray "Bam Bam" Whitler for the proposition that the Ohio County Sheriff's Department had a practice of "setting people up."

that the gun did not belong to Johnson, but that it instead was brought into the residence by Stewart, who took the gun out of his boot and stashed it under the chair where the police found it. Thus, the testimony that Johnson complains was omitted was, in fact, presented to the jury. The failure to call Stewart did not amount to ineffective assistance of counsel.[13]

▮▮▮▮ Johnson also contends that Pfeil failed to investigate and challenge the search warrant, which he claims was insufficient because it was based upon an unreliable, anonymous informant's information. The standard for determining whether an informant's tip provides probable cause for the issuance of a search warrant is based upon the "totality of the circumstances" set forth in the police affidavit.[14] In *Lovett v. Commonwealth*,[15] the Kentucky Supreme Court noted that

> [u]nder this test, the issuing magistrate need only "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." [462 U.S.] at 238, 103 S.Ct. at 2332. While an informant's veracity, reliability, and basis of knowledge are all "relevant considerations in the totality of the circumstances analysis," they are not conclusive and "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233, 103 S.Ct. at 2329....

*Gates* also explained that a magistrate's determination of probable cause is entitled to "great deference" and should be upheld so long as the magistrate, considering the totality of the circumstances, had a "substantial basis for concluding that a search would uncover evidence of wrongdoing." *Id.* at 236, 103 S.Ct. at 2331 (internal quotation omitted); *Beemer v. Commonwealth*, Ky., 665 S.W.2d 912, 914 (1984); *see also Massachusetts v. Upton*, 466 U.S. 727, 732–33, 104 S.Ct. 2085, 2087, 80 L.Ed.2d 721 (1984) (reemphasizing *Gates* ). It is within this rubric that we evaluate the decision of the trial court.

Typically, a bare and uncorroborated tip received from a confidential informant, without more, would be insufficient to establish probable cause for a search warrant. *E.g., Florida v. J.L.*, 529 U.S. 266, 270, 120 S.Ct. 1375, 1378, 146 L.Ed.2d 254 (2000). This is not such a case. As stated *supra,* the totality of the circumstances test requires a balancing of the relative indicia of reliability accompanying an informant's tip. *Gates, supra,* at 234, 103 S.Ct. at 2330. Thus, while a court may question an informant's motives, an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles [the informant's] tip to greater weight than might otherwise be the case." *Id.; United States v. Sonagere*, 30 F.3d 51, 53 (6th Cir.1994).[16]

In *Lovett,* the court upheld a search warrant based on detailed, first-hand ob-

---

**13.** *See Foley,* 17 S.W.3d at 885 (court noting that "[d]ecisions relating to witness selection are normally left to counsel's judgment and this judgment will not be second-guessed by hindsight") (citation omitted).

**14.** *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983); *Lo-*

vett *v. Commonwealth,* 103 S.W.3d 72, 77 (Ky.2003).

**15.** *Supra,* note 14.

**16.** 103 S.W.3d at 77–78.

servations. Similarly, in this case the affidavit, signed by Deputy Sheriff Norman Payton, demonstrated that the basis of the informant's knowledge was his first-hand presence and observations at Johnson's house within a week prior to the issuance of the search warrant, including his observation of "a quantity of methamphetamine 'crank' at the residence" and several sales made by Johnson at the residence. Deputy Payton's affidavit further stated that the confidential informant was known to Payton, that the informant had previously provided reliable information which resulted in drug-related arrests, and that the Ohio County Sheriff's department had received 3 to 4 months' worth of complaints from neighbors about people coming and going at the residence at all hours. This affidavit clearly showed that the informant had personal knowledge of facts constituting probable cause. The affidavit also sufficiently allowed the magistrate to judge the informant's credibility. Thus, counsel's decision not to challenge the search warrant was reasonable under the circumstances.[17]

▉▉▉ Next, Johnson contends that he was denied the effective assistance of counsel because Pfeil did not file the appropriate pretrial motions, including a motion for Dortch's recusal. As the basis for this motion, Johnson asserts both that

Dortch previously prosecuted him on unrelated charges, and that Dortch "chewed out" Johnson when he ended a live-in relationship with one of Dortch's neighbors and close friends.[18] "A motion for recusal should be made immediately upon discovery of the facts upon which the disqualification rests. Otherwise, it will be waived."[19] Here, the record indicates that Dortch was the circuit judge who originally arraigned Johnson in August 2000. Pfeil did not enter his appearance in the case until March 2001. As Johnson clearly was aware that Dortch was assigned to the case nearly seven months before Pfeil entered his appearance, Pfeil's failure to move for recusal did not constitute ineffective assistance of counsel.

▉▉▉ Johnson's next contention is that Pfeil was ineffective because he did not file a motion for a speedy trial. A defendant who does not demand a speedy trial does not waive his right; rather, a defendant's failure to assert this right is merely a factor "to be considered in an inquiry into the deprivation of the right."[20] The threshold question when analyzing the possible denial of a speedy trial is whether there was a presumptively prejudicial delay.[21]

Here, Johnson's right to a speedy trial attached when formal proceedings were

---

**17.** The video record supports a conclusion that Pfeil did, in fact, investigate the circumstances of the informant. At his initial appearance on behalf of Johnson on March 22, 2001, Pfeil advised the trial court that a discovery issue had arisen concerning the informant. In addition, *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), cited by Johnson, does not compel a different result. Factually, *J.L.* involved a tip from an anonymous caller from an unknown location. The facts in the instant case, by contrast, involve a confidential informant. *See Collins v. Commonwealth*, 142 S.W.3d 113, 121 (Ky. 2004) (Wintersheimer, J., dissenting).

**18.** In its order denying Johnson's *pro se* motion for recusal, which Johnson filed after the Kentucky Supreme Court's affirmance on appeal, the trial judge acknowledged Johnson's former assertion but denied the latter.

**19.** *Bussell v. Commonwealth*, 882 S.W.2d 111, 113 (Ky.1994) (internal citations omitted).

**20.** *Barker v. Wingo*, 407 U.S. 514, 528, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972).

**21.** *Gabow v. Commonwealth*, 34 S.W.3d 63, 70 (Ky.2000).

brought against him,[22] *i.e.*, the August 10, 2000 indictment. We do not believe, and Johnson has alleged nothing to persuade us, that the delay between the indictment and the June 26, 2001, trial was presumptively prejudicial, especially in light of the facts that Pfeil first entered his appearance on Johnson's behalf on March 5, 2001, and the trial court's order setting the trial date was entered on April 17. No ineffective assistance of counsel resulted from any failure to move for a speedy trial.

■ Johnson's next contention is that he was denied effective assistance of counsel because Pfeil neither prepared alternative jury instructions nor objected to the instructions ultimately given to the jury. Unquestionably, the Kentucky Supreme Court was critical of the jury instructions in this matter. The Court held that the jury instructions failed to require a finding beyond a reasonable doubt that Johnson possessed a handgun, and failed to require a nexus between the crime committed and the possession of the handgun.[23] Even so, the court nevertheless found no palpable error or "manifest injustice" since the jury instructions did contain a general instruction that the "reasonable doubt" standard applied to the whole case.[24] In addition, the Court found that the evidence supported the finding of a nexus between the pistol and Johnson's drug possession.[25]

■ In applying these holdings to Johnson's ineffective assistance of counsel claim, we note that a palpable error is one which upon consideration of the whole case the reviewing court concludes that a substantial possibility exists that the result would have been different absent the error.[26] Although stated differently, the substantial possibility of a different result is substantially the same as the prejudice prong of the *Strickland* analysis. We also note that the purpose of an RCr 11.42 motion is to provide means to attack a judgment which were not available on direct appeal.[27] As Johnson's RCr 11.42 complaints concerning the jury instructions were already addressed on direct appeal, they are not properly the subject of post-judgment proceedings. The trial court did not err in failing to grant relief.

■ The record also refutes Johnson's allegation that he was afforded ineffective assistance of counsel because Pfeil failed to advise him of his right to testify. Johnson testified during penalty phase of his trial. After expressing displeasure at not getting to testify during the guilt phase, the following exchange occurred between Pfeil and Johnson:

Pfeil: Mr. Johnson, prior to your trial getting started, I explained to you the pros and cons of your testifying. Correct?

Johnson: Yes sir.

Pfeil: I also asked you if you wanted to testify given those risks, did I not?

Johnson: You said it would be best for me not to testify so this wouldn't be brought out. But he brought it out in this court anyway.

Pfeil: But I did give you the choice. Correct?

Johnson: Yes sir.

**22.** *Reed v. Commonwealth,* 738 S.W.2d 818, 820 (Ky.1987).

**23.** *Johnson,* 105 S.W.3d at 435–36.

**24.** *Id.*

**25.** *Id.* at 436–38.

**26.** *Jackson v. Commonwealth,* 717 S.W.2d 511, 514 (Ky.App.1986).

**27.** *Gross v. Commonwealth,* 648 S.W.2d 853, 856 (Ky.1983).

Thus, the record demonstrates that Johnson was aware of his right to testify,[28] but voluntarily waived it. Given Johnson's extensive criminal record and the fact that his two children testified on his behalf concerning the family, the search, and items found at the home, such as the surveillance cameras and the police scanner, we cannot say that Pfeil's advice to Johnson was unreasonable.

Johnson's next complaint, that Pfeil failed to enforce separation of the witnesses, is also refuted by the record. Under KRE 615(2), the Commonwealth is permitted one officer or employee to be designated as its representative to sit at counsel table.[29] In this case, Detective Phillip Ballard served in that capacity, as demonstrated by the video record and as conceded by Johnson. The Commonwealth, in order, called four witnesses: Norman Payton, David Wayne Hack, Gregory Clark, and Ballard. At the time Payton testified no other Commonwealth witness was in the courtroom, other than Ballard as permitted. Payton remained in the courtroom after testifying, but he was not recalled to the stand. The second witness for the Commonwealth, David Wayne Hack from the Kentucky State Police Crime Laboratory, entered the courtroom from outside upon being called, and he apparently left after his testimony. Although the next witness, Clark, remained in the courtroom for the testimony of Ballard, the final witness, Clark was not recalled to the stand. The requirement of separation of witnesses is not violated if a witness, having testified and not being recalled, remains in the courtroom to hear the balance of the case.

Finally, Johnson alleges Pfeil failed (1) to inquire as to whether any jurors were tainted by a list posted in the courthouse which stated that Johnson was charged of being a convicted felon in possession of a handgun, despite the fact that this charge was severed from his drug charges, (2) to consult with Johnson in developing trial strategy and regarding jury selection, and (3) to adequately prepare for the penalty phase of the trial. With respect to the list of charges outside the courtroom, the trial judge in fact inquired of the jurors whether anyone knew Johnson, or heard or talked about the case. Further, Johnson makes no credible allegation that any juror was tainted by seeing this list. An RCr 11.42 motion is not a proper means for attempting discovery.[30] With regard to the strategy issue, the record refutes the claim that Pfeil failed to consult with Johnson or to develop trial strategy. Johnson's own pleadings indicate that Pfeil consulted with Johnson, even if in hindsight Johnson now thinks the amount was insufficient. The testimony of both Johnson and his daughter, Elizabeth, established that Pfeil consulted with Johnson and the witnesses on a number of occasions in an attempt to develop strategy and prepare testimony. The record also shows that Pfeil was actively engaged in questioning the Commonwealth's witnesses and presenting a defense on Johnson's behalf. As to the penalty phase, Johnson argues that his work to obtain his GED in 1994, his efforts to support his children after their mother abandoned the family, and his caretaking of his granddaughter should have been addressed. The record addresses the family relationships but contains no mention of Johnson's 1994 GED.

---

28. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983).

29. *See Dillingham v. Commonwealth*, 995 S.W.2d 377, 381 (Ky.1999).

30. *Haight v. Commonwealth*, 41 S.W.3d 436, 442 (Ky.2001).

However, considering the totality of the trial, as well as Johnson's extensive criminal record, we do not believe this omission was determinative in the sentence recommended by the jury.[31]

In order for individual allegations of ineffective assistance of counsel to have a cumulative effect, the individual allegations must have merit.[32] "Repeated and collective reviewing of alleged errors does not increase their validity."[33] Johnson has failed to demonstrate any basis for his claims that counsel's performance was deficient. He received a fundamentally fair trial.

Having concluded that the issues raised by Johnson are all refuted by the record, it follows that he was not entitled to an evidentiary hearing.[34]

### II. Motion to Recuse

■ In addition to citing the failure to file a motion to recuse as an example of Pfeil's ineffective assistance as counsel, Johnson maintains on appeal that the trial court erred in denying his postjudgment *pro se* motion for Dortch's recusal. We disagree.

"A motion for recusal should be made immediately upon discovery of the facts upon which the disqualification rests. Otherwise, it will be waived."[35] The record indicates that Dortch was the circuit judge originally assigned to the case in August 2000. Pfeil did not enter his appearance in the case until March 2001, and the trial began on June 26, 2001. Johnson claims he expressed to Pfeil his belief that Dortch should be recused prior to the trial in the matter, but no motion for recusal was filed until more than three years after the trial. While authority exists that issues relating to the recusal and appointment of a judge may be reviewed under the palpable error rule,[36] even palpable errors may be waived.[37] Thus, the trial court did not err in overruling Johnson's motion, because Johnson waived any objection to Dortch presiding over the trial by filing an extremely untimely motion.

The Ohio Circuit Court's order is affirmed.

ALL CONCUR.

**31.** *Id.* at 441–42 (court noting that "the reviewing court must focus on the totality of the evidence before the judge or jury and assess the overall performance of counsel throughout the case in order to determine whether the identified acts or omissions overcome the presumption that counsel rendered reasonable professional assistance.").

**32.** *McQueen v. Commonwealth,* 721 S.W.2d 694, 701 (Ky.1986).

**33.** *Parrish v. Commonwealth,* 121 S.W.3d 198, 207 (Ky.2003).

**34.** *Baze v. Commonwealth,* 23 S.W.3d at 628.

**35.** *Bussell v. Commonwealth,* 882 S.W.2d 111, 113 (Ky.1994) (internal citations omitted).

**36.** *Jacobs v. Commonwealth,* 947 S.W.2d 416, 419 (Ky.App.1997).

**37.** *West v. Commonwealth,* 780 S.W.2d 600, 602 (Ky.1989).