RENDERED: MAY 16, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0801-MR

ANTWOIN WILLIAMS                              APPELLANT

               APPEAL FROM JEFFERSON CIRCUIT COURT
v.              HONORABLE ANGELA MCCORMICK BISIG, JUDGE
             ACTION NOS. 16-CR-001681 AND 18-CR-002503

COMMONWEALTH OF KENTUCKY                 APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, ECKERLE, AND L. JONES, JUDGES.

COMBS, JUDGE: In this criminal appeal, Antwoin Williams appeals the denial of his motion for post-conviction relief filed pursuant to provisions of the Kentucky Rules of Criminal Procedure (RCr) 11.42. Williams seeks to set aside the judgment of the Jefferson Circuit Court convicting him of murder, first-degree wanton endangerment, possession of a handgun by a convicted felon, and the status offense of being a persistent felony offender. The judgment was entered

following a four-day jury trial. Separately, Williams pleaded guilty to attempted criminal possession of a forged instrument and tampering with physical evidence. He was sentenced to serve thirty-years' imprisonment.

On appeal, Williams argues that the trial court erred to his substantial prejudice when it denied his RCr 11.42 motion without conducting an evidentiary hearing. He contends that he was denied the effective assistance of both trial counsel and appellate counsel. After our review, we find no error. Therefore, we affirm.

As part of its direct review of Williams's convictions and sentence, the Kentucky Supreme Court summarized the underlying facts in an unpublished opinion. *Williams v. Commonwealth*, No. 2019-SC-000288-MR, 2020 WL 2831839, at *1-2 (Ky. May 28, 2020). In his brief, which Williams filed *pro se*, he incorporated that summary as follows:

> On June 10, 2016, Williams spent most of the day riding around in a car with Sequoia Camp, Jacoya Mangrum, and Mangrum's one-year old son. Camp drove, picking up Williams around 11:00 AM, then picking up Mangrum and the child. The group rode around in Camp's vehicle for much of the day, stopping at a friend's house at least once. Troy Cheatham also joined the group, though he drove separately. The group continued to drive around until the early morning hours.
>
> At one point, Camp drove the group to a man's house so Mangrum could collect some money from the man. However, the man was not home, so the group drove to a nearby gas station, arriving sometime around 2:44 AM

on June 11, 2016.  Soon after, Camp, Mangrum, and Mangrum's son left in Camp's car, but Williams and Cheatham stayed behind.  Camp drove Mangrum and her son back to the man's house, and the man gave Mangrum the money she had been trying to collect from him earlier.  Camp, Mangrum, and the child then returned to the gas station around 3:44 AM.  Williams got into Camp's car, sitting in the back passenger-side seat, while Mangrum sat in the front passenger seat.  Her son was in the back seat with Williams.  The group left the gas station around 3:50 AM.  Cheatham followed behind in his own vehicle.

After the group left the gas station, Williams and Mangrum began arguing over gas money.  At some point during the argument, Mangrum punched Williams, and the fight escalated into a physical fight.  Camp could not get the two to stop fighting, and she continued to drive for several blocks before pulling over.  She flagged Cheatham down, who pulled over and got out of his car.  He and Camp physically separated Williams and Mangrum, but the two continued to cuss at each other.  Soon, Williams and Mangrum, now outside of the vehicle, began physically fighting again.  Camp and Cheatham separated Williams and Mangrum again, and Camp told Mangrum to get back into the car so Camp could drive her home.  Mangrum sat down in the front passenger seat of Camp's car.  The passenger-side door was still open, however.  Mangrum then picked up Williams's phone and threw it on the ground.  Williams then came around the vehicle and shot Mangrum in the head before running away.  Camp removed Mangrum's child from the backseat and called 911.  Mangrum died at the scene.

Williams was arrested the following day after a routine traffic stop.

*Id.*

-3-

Pursuant to provisions of Kentucky's Constitution, Williams appealed his convictions and sentence directly to the Kentucky Supreme Court. KY. CONST. § 110(2)(b). On appeal, Williams argued that the trial court erred by refusing to instruct the jury with respect to the crime of first-degree manslaughter under extreme emotional disturbance. Following its review, the Kentucky Supreme Court rejected Williams's argument and affirmed his convictions and sentence.

On August 9, 2021, Williams, *pro se,* filed a motion to vacate pursuant to RCr 11.42. The motion listed eight instances where Williams asserted that his trial counsel was ineffective. He also argued that his appellate counsel failed to provide effective assistance.

The trial court examined each claim raised by Williams. In an opinion and order entered in January 2022, the trial court determined that an evidentiary hearing was not necessary because each of Williams's claims could be resolved through an examination of the record. Following its review, the trial court denied Williams's motion for relief.

Williams filed a notice of appeal and requested that we appoint appellate counsel to assist him in these proceedings. In an order entered in January 2024, we directed our clerk to request the record from the Jefferson Circuit Court and to transmit that record to the Department of Public

Advocacy (DPA). We ordered that DPA would have 30 days from its receipt of the record to examine the record and to file a response to this Court indicating whether it intended to represent Williams on appeal pursuant to the guidelines set forth in KRS[1] Chapter 31. DPA filed its response with this court on March 25, 2024.

In its response, DPA indicated that it had undertaken a thorough review of the record and determined that Williams's post-conviction proceeding "is not a proceeding that a reasonable person with adequate means would be willing to bring at his . . . own expense[.]" KRS 31.110(2)(c). It concluded that the proceeding did not merit appointment of counsel. We granted Williams time to file a brief, *pro se*. His brief was filed with this Court on October 2, 2024. The Commonwealth responded.

"The purpose of RCr 11.42 is to provide [the appellant] with a means to obtain relief for errors that rise to the level of a constitutional deprivation of due process." *Johnson v. Commonwealth*, 180 S.W.3d 494, 498 (Ky. App. 2005). Where a claim under RCr 11.42 alleges ineffective assistance of counsel, we evaluate that claim under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), *as adopted by the Kentucky Supreme Court in Gall v.*

---

[1] Kentucky Revised Statutes.

*Commonwealth*, 702 S.W.2d 37 (Ky. 1985). *Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016).

Pursuant to *Strickland*, "an appellant must first show that counsel's performance was deficient." *Id.* (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

Additionally, the appellant must show that counsel's deficient performance prejudiced his defense in such a way as to "deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The result may be considered unreliable if there is a reasonable probability that but for counsel's deficient performance, the outcome of the proceedings would have been different. *Id.* at 688-89. Reasonable probability means a probability sufficient to undermine confidence in the original outcome in light of the totality of the evidence. *Id.* at 694-95.

Where the movant's assignment of error alleges ineffective assistance of appellate counsel for failing to raise a particular issue on direct appeal, the movant must establish that counsel's performance was so deficient as to overcome the strong presumption that counsel's choice of

issues to present to the appellate court was a reasonable exercise of appellate strategy. *Commonwealth v. Pollini*, 427 S.W.3d 144, 149 (Ky. 2014). In order to overcome that presumption, the omitted issue must be "clearly stronger" than the issues that appellate counsel chose to present. *Id.* Finally, the movant must establish prejudice by showing that absent counsel's deficient performance, the appeal would have likely succeeded. *Id.*

If an evidentiary hearing is not conducted by the trial court, as in this case, our review of the trial court's decision not to hold an evidentiary hearing is limited to "whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." *Lewis v. Commonwealth*, 411 S.W.2d 321, 322 (Ky. 1967); *see also Sparks v. Commonwealth*, 721 S.W.2d 726, 727 (Ky. App. 1986).

Williams argues first that the circuit court erred by rejecting his claim that trial counsel was ineffective for failing to move for a mistrial. He contends that the Commonwealth engaged in misconduct by forecasting evidence in its opening statement that was inconsistent with testimony later provided by its witnesses. Specifically, Williams explains that while the Commonwealth expected that Camp and Cheatham would testify that they *saw* Williams shoot the victim, Camp actually testified that she knew Williams shot the victim because Camp was sitting in the driver's seat of the

vehicle beside Mangrum when she *heard* the shot that killed Mangrum and saw Williams flee. Cheatham repeatedly testified that he could not recall what happened that morning or remember the statements that he made to detectives and a 911 operator following the shooting.

Opening statements are not evidence, and prosecutors are given considerable leeway when presenting them to a jury. *Manning v. Commonwealth*, 701 S.W.3d 478, 503-04 (Ky. 2024), *cert. denied sub nom. Manning v. Kentucky*, No. 24-6446, 2025 WL 1020387 (U.S. Apr. 7, 2025) (citing *Mayse v. Commonwealth*, 422 S.W.3d 223, 227 (Ky. 2013)). Counsel may properly direct the jury's attention to all facts and circumstances that he in good faith believes he will be allowed to develop through the evidence. *Mayse v. Commonwealth*, *supra* (citing *Choate v. Commonwealth*, 176 Ky. 427, 195 S.W. 1080 (1917), and *Bynum v. Commonwealth*, 248 Ky. 564, 59 S.W.2d 550 (1933)).

There is no indication in this case that the prosecutor's opening statement was made in bad faith. Instead, the prosecutor fairly apprised the jury of what the Commonwealth expected to prove -- that the witnesses observed Williams shoot and kill the victim. Camp testified that after the victim threw down Williams's cell phone, Williams walked around the car and up to the victim -- and then shot her in the face. While Camp admitted

that she did not see the gun in Williams's hand at that very moment, she had seen him with a gun earlier.

Cheatham, who was incarcerated at the time of Williams's trial, repeatedly indicated that he could not recall the events surrounding the shooting or the content of his prior statements. Those prior statements, which were presented to the jury, indicated that Cheatham had told police that immediately before the shooting, Williams approached the passenger side of the vehicle and put his hand inside for several seconds. Cheatham said that he did not know whether the victim knew Williams had a gun -- but that she just sat there. Cheatham indicated that Williams had a gun in his hand after the shooting. The prosecutor's statement was not objectionable; the jury was instructed that opening statements were not evidence; trial counsel's performance was not deficient. The trial court did not err by denying Williams relief on this basis.

Next, Williams contends that the circuit court erred by rejecting his claim that trial counsel was ineffective for failing to investigate his background in advance of sentencing. Williams suggests that he has "a diagnosis of ADHD [Attention-Deficit/Hyperactivity Disorder], bipolar and mood swings" and argues that these conditions were relevant to the jury's decision-making in the penalty phase of trial.

When seeking post-conviction relief, the movant "must aver facts with sufficient specificity to generate a basis for relief." *Lucas v. Commonwealth*, 465 S.W.2d 267, 268 (Ky. 1971). Bare and conclusory allegations of error do not justify an evidentiary hearing or relief under RCr 11.42. *Sanborn v. Commonwealth*, 975 S.W.2d 905 (Ky. 1998), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151, 157 (Ky. 2009).

In his post-conviction motion, Williams presented **no evidence** that he suffered with these conditions. Williams assures us that he "has the kind of troubled history" that courts have viewed as relevant in measuring moral culpability. However, in light of the brutality and senselessness of the crimes of which he was convicted, it strains credulity to imagine how these alleged mental conditions would have altered the jury's sentencing recommendation. The trial court found specifically that if this evidence had been presented in mitigation, it would not have changed the court's sentencing decision.

Williams presented the court with a bare allegation of error. Moreover, he was not prejudiced by this alleged error. Consequently, the circuit court did not err by concluding that Williams's allegation did not justify the relief he sought.

Next, Williams argues that the circuit court erred by rejecting his claim that trial counsel provided ineffective assistance because he "fail[ed] to raise issue with [Cheatham's] competency." He contends that Cheatham was incompetent to testify because he lacked capacity to recollect facts. The Commonwealth contends that Cheatham's reticence to testify against Williams did not reflect a lack of capacity.

Pursuant to the Kentucky Rules of Evidence (KRE), witnesses are presumed to be competent to testify at trial. KRE 601. However, the trial court is empowered to exclude the testimony of a witness who is so mentally incapacitated or mentally immature that no testimony of probative worth can be expected. *Price v. Commonwealth*, 31 S.W.3d 885, 891 (Ky. 2000). A witness is disqualified where the trial court determines that the witness lacks the capacity to recollect facts. *Id.*

Before he was sworn to testify, Cheatham explained to defense counsel and to the prosecutor that he had no intention of testifying at trial concerning the incident. This statement does not indicate that he lacked capacity to recollect facts, however. Under the circumstances, it was entirely proper to allow the jury to evaluate Cheatham's demeanor as he testified that he could not recall the events surrounding the murder. Cheatham's testimony does not indicate that he was unable to recollect facts.

Instead, it suggests that he was merely unwilling to provide testimony damaging to Williams. Unwillingness does not equate with incapacity. As the Commonwealth observes, "Cheatham's lack of recollection might have been incredible, which is a determination that the jury is particularly adept to make, but he was certainly not incompetent under the rule [of evidence.]"

There was no basis upon which to challenge Cheatham's competency. Therefore, the circuit court did not err by concluding that counsel provided effective assistance at trial on this alleged ground.

Williams also challenges the effectiveness of his appellate counsel. First, he argues that appellate counsel erred by failing to include as a point of error on appeal the admission of the lead detective's testimony indicating that Williams appeared in a video to be carrying a gun. Williams contends that this observation by the detective constituted expert testimony that was inadmissible from a lay witness.

We disagree with Williams's assessment of the evidence and his characterization of the witness. More importantly, given the direct evidence presented by other witnesses that Williams was carrying a gun on the day in question, we are persuaded that appellate counsel did not err by choosing not to present this contention to the Kentucky Supreme Court as reversible error. This issue was clearly not stronger than the issue raised by appellate counsel

in Williams's matter-of-right appeal, nor was there a reasonable probability of success on appeal had it been raised. Consequently, the circuit court did not err by concluding that appellate counsel provided Williams with effective assistance.

Next, Williams contended that appellate counsel omitted to his detriment any argument concerning the sufficiency of the evidence because no witness testified that he saw Williams with a gun in his hand when the victim was shot and killed. He argues that the circuit court erred in rejecting this argument. Again, in light of the compelling evidence presented against Williams at trial, this allegation is without merit. Appellate counsel made a reasoned and a reasonable decision not to include this item as an allegation of error on appeal. The circuit court did not err by concluding that appellate counsel provided Williams with effective assistance on appeal.

Finally, we reject Williams's contention that the circuit court erred by denying his motion for post-conviction relief without first conducting an evidentiary hearing. As cited above, an evidentiary hearing is not required where a movant's claims are refuted by reference to the record. *Stiger v. Commonwealth*, 381 S.W.3d 230, 234 (Ky. 2012). As our analysis confirms, the trial court did not err by summarily rejecting Williams's claims for relief.

-13-

We affirm the order of the Jefferson Circuit Court.


ALL CONCUR.


BRIEF FOR APPELLANT:

Antwoin Willliams, *pro se*
West Liberty, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General
Frankfort, Kentucky