RENDERED:  AUGUST 20, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0526-MR

SAMUEL PATTON                                                APPELLANT


APPEAL FROM EDMONSON CIRCUIT COURT
v.        HONORABLE PHILLIP R. PATTON, SPECIAL JUDGE
ACTION NO. 10-CR-00019


COMMONWEALTH OF KENTUCKY                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  DIXON, GOODWINE, AND TAYLOR, JUDGES.

DIXON, JUDGE:  Samuel Patton appeals the denial of his RCr[1] 11.42 motion to

vacate judgment of his conviction, alleging ineffective assistance of counsel, and

denial of his motion for an evidentiary hearing, entered by the Edmonson Circuit

Court on February 7, 2020.  Applying the two-pronged performance and prejudice

standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052,

---

[1] Kentucky Rules of Criminal Procedure.

80 L. Ed. 674 (1984), the trial court denied Patton's motion, finding that he failed to demonstrate either prong of *Strickland*'s requirements of deficient assistance or that his case was prejudiced by trial counsel's actions. Following a careful review of the record, the briefs, and the law, we affirm.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Prior to the occurrence of events described herein, Samuel Patton and Cheryl Coffey were friends. On a handful of occasions, Patton even spent the night at Coffey's house. Patton also spent time with Coffey's daughter, K.H.,[2] both inside and outside of Coffey's presence. One evening in January 2010, K.H. rode with Patton to a liquor store in Bowling Green. After he made his purchase there, Patton gave K.H. some alcohol to drink. Later that month, on or about January 30, 2010, Patton spent the night at Coffey's house. Around midnight, Patton awakened K.H., led her to the kitchen, and raped her. Afterward, K.H. was scared and confused and did not immediately tell anyone what had transpired.

A few weeks later, on February 18, 2010, K.H. overheard her mother speaking on the telephone with a friend about child sexual abuse and began acting strangely. Coffey locked K.H. in her room and passed a note under the doorway inquiring as to whether K.H. had been sexually abused. Coffey was alarmed by

---

[2] Pursuant to Court policy, to protect the privacy of minor children, we refer to minors by their initials only. K.H. was only twelve years old when these events occurred.

K.H.'s written responses and took K.H. to the Sheriff's office to make a report. Deputy Sheriff Mike Vincent interviewed them and referred K.H. to the Child Advocacy Center (CAC) in Bowling Green for examination. Thereafter, Vincent also interviewed Patton.

On March 2, 2010, K.H. was examined by Dr. Jeffries Blackerby,[3] a pediatrician at the CAC, who observed a partially healed tear in K.H.'s hymen consistent with the allegations of sexual assault she relayed to him.

Shortly thereafter, Patton was indicted by the Edmonson County grand jury for rape in the first degree,[4] unlawful transaction with a minor (UTM) in the first degree,[5] UTM in the third degree (UTM III),[6] and being a persistent felony offender in the second degree (PFO II).[7] Patton was subsequently appointed legal representation.

Four years later, on March 20 and 21, 2014, Patton was tried by a jury. The Commonwealth called Vincent, Coffey, K.H., and Dr. Blackerby to

---

[3] The spelling of Dr. Blackerby's name is not clear from the record, and his name is spelled multiple ways in the briefs. This is the spelling we believe to be correct and have chosen to use in our Opinion.

[4] Kentucky Revised Statutes (KRS) 510.040, a Class B felony.

[5] KRS 530.064, a Class B felony.

[6] KRS 530.070, a Class A misdemeanor.

[7] KRS 532.080.

-3-

testify. Patton called three witnesses - including his mother, Ruth Parker - and recalled Vincent. After closing arguments, the jury entered deliberations and quickly returned a guilty verdict of rape in the first degree and UTM III.

Before the sentencing phase of the trial commenced, the prosecution, defense counsel, and Patton reached a plea agreement. Following this agreement and the trial court's colloquy, Patton admitted - under oath and on the record - his guilt to first-degree rape and UTM III and entered his guilty plea in exchange for a prison sentence that was three years less than the minimum the jury could recommend at sentencing. The trial court asked Patton whether he needed additional time to consider his options, and he declined. During the colloquy, the trial court specifically informed Patton that his guilty plea would extinguish his right to appeal; Patton voluntarily, intelligently, and knowingly acknowledged this. The trial court also asked Patton if he was satisfied with the performance of his counsel, to which Patton responded affirmatively.

Prior to final sentencing, Patton moved the trial court to withdraw his waiver of his right to appeal. The motion was denied, and Patton was sentenced in accordance with his plea agreement. Patton appealed this denial and other alleged evidentiary errors to our Court, which reversed the trial court's denial and addressed the evidentiary issues raised by Patton. This led the Commonwealth to seek - and subsequently be granted - discretionary review by the Supreme Court of

Kentucky,[8] which ultimately reversed the decision of the Court of Appeals and

reinstated Patton's conviction and sentencing. *Id.*

---

[8] We adopt those facts, as follows:

> On March 20, 2014, Appellee, Samuel Patton (Appellee), was convicted by an Edmonson County jury of first-degree rape and third-degree unlawful transaction with a minor (UTM). After the jury's foreperson read the guilty verdict, the trial court advised Patton that his bond was revoked, that he could not leave the courtroom, that he had the right to appeal the jury's verdict, and that counsel would be appointed to represent him on appeal if he could not afford an attorney. The trial court made these Statements at approximately 12:33 p.m. on the March 21, 2014, video record.
>
> After advising Appellee of his rights, the trial judge held a bench conference with Appellee, defense counsel, and the Assistant Commonwealth's Attorney. The trial court reminded the parties that Appellee's crimes were subject to the 85 percent requirement of the violent offender statute. In an apparent recognition of the gravity of the heavy sentence the Appellee was now facing, the trial judge recommended that Appellee and the Commonwealth discuss a possible resolution. The jury was sent to the jury room while Appellee and the Commonwealth negotiated.
>
> Soon thereafter, Appellee entered a guilty plea in exchange for a seventeen-year prison sentence. In addition to engaging in a traditional plea colloquy, Appellee accepted and signed a Motion to Enter Guilty Plea (form AOC-491). See *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). His plea agreement included a waiver of his right to appeal his Conviction. Two months later, Appellee retained new counsel and filed a "Motion to Withdraw Waiver of Right to Appeal." The trial court denied his request and sentenced him in accordance with his plea agreement.
>
> In a divided decision, the Court of Appeals reversed his sentence having determined that his guilty plea did not satisfy *Boykin*. The court also held that it was reversible error to admit certain bolstering testimony during the guilt phase of trial. Accordingly, the Court of Appeals reversed Appellee's conviction and remanded for a new trial.

*Commonwealth v. Patton*, 539 S.W.3d 651, 652-53 (Ky. 2018).

Following the Supreme Court's Opinion, Patton filed multiple motions - both with and without the assistance of counsel - including the one pursuant to RCr 11.42, as supplemented and amended, which was denied by the trial court and is now before us. The trial court denied this motion because Patton failed to demonstrate that the alleged errors of trial counsel prejudiced his case. This appeal followed.

## STANDARD OF REVIEW

As previously observed by the Supreme Court of Kentucky on Patton's direct appeal, when determining whether a guilty plea was entered knowingly, voluntarily, and intelligently, trial courts must consider the totality of the circumstances. *Edmonds v. Commonwealth*, 189 S.W.3d 558, 566 (Ky. 2006). "This inquiry is inherently fact-sensitive" and is reviewed for clear error. *Id.*

Concerning Patton's ineffective assistance of counsel (IAC) claims, as established in *Bowling v. Commonwealth*, 80 S.W.3d 405, 411-12 (Ky. 2002):

> [t]he *Strickland* standard sets forth a two-prong test for ineffective assistance of counsel: [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. [*Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064]. **To show prejudice, the defendant must show there is a**

> **reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.** A reasonable probability is the probability sufficient to undermine the confidence in the outcome. *Id.* at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 695.

(Emphasis added.) Both *Strickland* prongs must be met before relief may be granted. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Herein, we need not determine whether Patton's counsel's performance was adequate on any or all of the issues raised because Patton fails to demonstrate prejudice resulting from counsel's alleged deficient performance in representation of Patton.[9]

To establish prejudice, a movant must show a reasonable probability exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694, 104 S. Ct. at 2068. In short, one must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, 466 U.S. at 687, 104 S. Ct. at 2064. Fairness is measured in terms of reliability. "The likelihood of a different result must be substantial, not just conceivable." *Commonwealth v. Pridham*, 394

---

[9] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*, 466 U.S. at 697, 104 S. Ct. at 2069.

-7-

S.W.3d 867, 876 (Ky. 2012) (quoting *Harrington v Ritcher*, 562 U.S. at 112, 131

S. Ct. at 792 (2011)).

> Mere speculation as to how other counsel might have performed either better or differently without any indication of what favorable facts would have resulted is not sufficient. Conjecture that a different strategy might have proved beneficial is also not sufficient. *Baze* [*v. Commonwealth*, 23 S.W.3d 619 (Ky. 2000)]; *Harper v. Commonwealth*, 978 S.W.2d 311 (1998). As noted by *Waters v. Thomas*, 46 F.3d 1506 (11th Cir. 1995) (*en banc*): "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel."

*Hodge v. Commonwealth*, 116 S.W.3d 463, 470 (Ky. 2003), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009). "No conclusion of prejudice . . . can be supported by mere speculation." *Jackson v. Commonwealth*, 20 S.W.3d 906, 908 (Ky. 2000) (citations omitted).

In the context of an IAC claim pertaining to a defendant entering a guilty plea, Kentucky's highest court has opined:

> A showing that counsel's assistance was ineffective in enabling a defendant to intelligently weigh his legal alternatives in deciding to plead guilty has two components: (1) that counsel made errors so serious that counsel's performance fell outside the wide range of professionally competent assistance; and (2) **that the deficient performance so seriously affected the outcome of the plea process that, but for the errors of counsel, there is a reasonable probability that the defendant would not have pleaded guilty, but would have insisted on going to trial.**

. . .

> The trial court's inquiry into allegations of ineffective assistance of counsel requires the court to determine whether counsel's performance was below professional standards and **caused the defendant to lose what he otherwise would probably have won and whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory.** Because [a] multitude of events occur in the course of a criminal proceeding which might influence a defendant to plead guilty or stand trial, the trial court must evaluate whether errors by trial counsel significantly influenced the defendant's decision to plead guilty in a manner which gives the trial court reason to doubt the voluntariness and validity of the plea.

*Bronk v. Commonwealth*, 58 S.W.3d 482, 486-87 (Ky. 2001) (footnotes and internal quotation marks omitted) (emphasis added). The United States Supreme Court has further observed:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

Here, Patton exercised his right to a jury trial - and lost. However, as will be discussed herein, we cannot say his conviction was the result of either counsel's actions or inactions.

## ANALYSIS

On appeal, Patton argues his post-conviction plea colloquy should not be dispositive of whether he is entitled to relief for ineffective assistance of counsel at trial. However, it is well-established that the effect of a guilty plea is to waive all defenses other than that the indictment charges no offense. *Quarles v. Commonwealth*, 456 S.W.2d 693 (Ky. 1970); *Commonwealth v. Watkins*, 398 S.W.2d 698 (Ky. 1966); *cert. denied Watkins v. Kentucky*, 384 U.S. 965, 86 S. Ct. 1596, 16 L. Ed. 2d 677 (1966). RCr 11.42 does not authorize criminal defendants to disregard a valid plea agreement. In the case herein, "since appellant's plea of guilty makes his allegation of ineffective assistance of counsel unavailing, he is not entitled to a hearing." *Cox v. Commonwealth*, 465 S.W.2d 76, 78 (Ky. 1971). Accordingly, we hold that because Patton's plea was knowingly and voluntarily entered, his IAC claim pertaining to his guilty plea was properly dismissed.

We further note that trial counsel is not ineffective merely because he negotiated a plea deal that his client willingly accepted but later regretted. Instead, the defendant must show that rejecting the plea deal would have been rational under the circumstances. *Stiger v. Commonwealth*, 381 S.W.3d 230, 237 (Ky.

2012). Patton has not done so, nor can he. Overwhelming evidence of Patton's guilt was presented at trial. Furthermore, Patton admitted his guilt. Under the plea agreement, Patton was able to have the PFO II charge dropped and serve three years less prison time than the minimum twenty years the jury could have recommended at sentencing. Rejecting such a deal would not have been rational, nor would it have been reasonable for counsel to advise otherwise under these circumstances.

Even so, Patton asserts his right to effective assistance of counsel at trial was not retroactively extinguished by his post-conviction guilty plea. Patton claims nothing in the plea colloquy expressly or implicitly waived his Sixth Amendment right to effective assistance of counsel. However, not every single right that is waived must be specifically listed by the trial court in its colloquy. Even issues concerning constitutional rights, such as the right to conflict-free counsel, may be waived if done so knowingly and intelligently.

In *Boykin*, the United States Supreme Court cited *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S. Ct. 884, 890, 8 L. Ed. 2d 70 (1962), in which it dealt with a problem of waiver of the Sixth Amendment right to counsel, holding, "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was

offered counsel but intelligently and understandingly rejected the offer. Anything

less is not waiver." *Boykin*, 395 U.S. at 242, 89 S. Ct. at 1712.

On direct appeal, the Supreme Court observed the following regarding

the colloquy surrounding Patton's guilty plea:

> **[Patton] indicated that he was satisfied with trial counsel's performance.**
>
> In addition, the trial judge specifically asked Appellee on the record: **"[D]o you further understand that by pleading guilty, there will be no appeal to a higher court from the judgment of this court finding you guilty?" Appellee responded, "Yes, your honor."** After acknowledging that he understood the rights he was giving up by virtue of his guilty plea, Appellee admitted that he committed the crimes to which he was pleading guilty.
>
> **It is also noteworthy that Appellee was engaged in the colloquy.** For example, he specifically asked the court about his ability to remain on bail pending sentencing. He also has a previous criminal record indicating that he entered guilty pleas in two separate cases in 2006 - one in Warren County for burglary and assault and another in Edmonson County for criminal trespass. Therefore, his knowledge of the criminal justice system and of his plea agreement was clearly informed by previous experience.
>
> Although this case is somewhat unique because it involves a guilty plea entered after a conviction, **there is nothing in the record here to indicate that Appellee was confused as to the nature of his rights.** In fact, we have previously enforced guilty plea agreements in similar cases involving post-conviction pleas. *E.g., Geary v. Commonwealth*, 96 S.W.3d 1 (Ky. 2001); and *Johnson v. Commonwealth*, 120 S.W.3d 704 (Ky. 2003). **Based on the totality of the circumstances, we hold**

-12-

**that Appellee's guilty plea was made knowingly, voluntarily, and intelligently.** Therefore, the trial court did not commit clear error in refusing to allow Appellee to withdraw his plea.

*Patton*, 539 S.W.3d at 653-54 (emphasis added). Thus, waiver here was not implied by Patton's silence but was expressly addressed.

Patton further argues that the inclusion of a waiver of his right to appeal - including his right to appeal for IAC - in a plea agreement constitutes professional misconduct by his trial counsel, citing *U.S., ex rel. U.S. Attorneys ex rel. E., W. Dists. of Kentucky v. Kentucky Bar Ass'n*, 439 S.W.3d 136 (Ky. 2014). Yet, the Supreme Court of Kentucky has observed, our duty is:

> "not to enforce the Canons of Legal Ethics, but to . . . assure vindication of the defendant's Sixth Amendment right to counsel." *Mickens v. Taylor*, 535 U.S. 162, 176, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002). Indeed, the scope of the right to effective assistance of counsel under the Sixth Amendment is not dictated by state ethical rules. *See Nix v. Whiteside*, 475 U.S. 157, 165, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986) (**"[B]reach, of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel."**). So conduct that might lead to a conflict under our ethical rules will not necessarily lead to an unconstitutional conflict for Sixth Amendment purposes.

*Samuels v Commonwealth*, 512 S.W.3d 709, 715 (Ky. 2017) (emphasis added).

Stated another way, even though inclusion of this type of waiver may violate an attorney's ethical duties to a criminal defendant, such a violation does not

automatically equate to ineffective assistance of counsel in contravention of the defendant's Sixth Amendment rights.

In the case cited by Patton, the Court held, "A waiver of IAC is the right of the defendant, and nothing in E-435[10] limits the defendant's freedom of choice or control over his defense." *U.S., ex rel. U.S. Attorneys ex rel. E., W. Dists. of Kentucky v. Kentucky Bar Ass'n*, 439 S.W.3d at 146 (footnote added). Thus, a criminal defendant is in the driver's seat of his or her own case. Defense counsel may advise whether to accept a plea agreement which may include this type of waiver, but it is the defendant's decision whether to take that advice or to reject it. It is the defendant's choice whether to waive his right to appeal, including that for an IAC claim. That choice, when knowingly, intelligently, and voluntarily made - as was the case here - must be enforced.

Patton also contends the trial court erred in denying his request for post-conviction relief without holding an evidentiary hearing. To this challenge, we first must ask: When is an evidentiary hearing required? The Supreme Court of Kentucky has held:

> the trial judge shall determine whether the allegations in the motion can be resolved on the face of the record, in

---

[10] E-435 is a Kentucky Bar Association (KBA) Ethics Opinion which finds the use of IAC waivers in plea agreements violates the Supreme Court Rules of Professional Conduct for attorneys. The United States Attorneys for the Eastern and Western Districts of Kentucky moved the Supreme Court of Kentucky to review the merits of E-435 in *U.S., ex rel. U.S. Attorneys ex rel. E., W. Dists. of Kentucky v. Kentucky Bar Ass'n*. In that case, the Court ultimately held that E-435 accurately states its ethical rules.

which event an evidentiary hearing is not required. A hearing is required if there is a material issue of fact that cannot be conclusively resolved, i.e., conclusively proved or disproved, by an examination of the record. *Stanford v. Commonwealth*, [854 S.W.2d 742, 743-44 (Ky. 1993)], *cert. denied*, 510 U.S. 1049, 114 S. Ct. 703, 126 L. Ed. 2d 669 (1994); *Lewis v. Commonwealth*, [411 S.W.2d 321, 322 (Ky. 1967)]. The trial judge may not simply disbelieve factual allegations in the absence of evidence in the record refuting them. *Drake v. United States*, 439 F.2d 1319, 1320 (6th Cir. 1971).

*Fraser v. Commonwealth*, 59 S.W.3d 448, 452-53 (Ky. 2001). This is precisely what happened here. Since all Patton's allegations of error may be resolved by a review of the record, as more specifically addressed herein, no evidentiary hearing was required. Thus, the trial court did not err in denying same.

To support his contention that he was entitled to an evidentiary hearing, Patton alleges his trial counsel failed to conduct a thorough and complete pretrial investigation and to effectively prepare for trial. These allegations stem from an alleged lack of investigation concerning two potential witnesses - Jeremy Johnson and B.J. Lindsey - and failure to sufficiently interview Parker before her testimony. According to Patton, unsworn and unsigned statements from Johnson and Lindsey were in trial counsel's file, but it is unclear whether counsel interviewed them regarding said statements. The statement from Johnson indicates that K.H. told Johnson she lied when she told her mother that Patton had raped her, but that she would not lie in court. The statement from Lindsey purports to

provide an alternate source for K.H.'s injuries which supposedly occurred in his and her mother's presence while they smoked a "joint."

The Court in *Strickland* discussed the deference our courts must give trial counsel concerning their investigation and decisions to call witnesses, stating:

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.*, 466 U.S. at 690-91, 104 S. Ct. at 2066.

Following *Strickland*, the Court further held that: "[i]n assessing counsel's investigation, we must conduct an objective review of their performance, measured for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time, (every effort [must] be made to eliminate the distorting effects of hindsight)." *Wiggins v. Smith*, 539 U.S. 510, 523, 123 S. Ct. 2527, 2536, 156 L. Ed. 2d 471 (2003) (internal quotation marks and citation omitted).

In Kentucky, this deferential standard pertaining to counsel's investigation and trial strategy has more recently been described as:

> Counsel's performance is deficient when counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. That being said, the proper inquiry when assessing an ineffective assistance of counsel claim is whether the counsel's representation fell below an objective standard of reasonableness. **In this reasonableness analysis, we are directed to indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance because, given the surrounding circumstances, the challenged action might be considered sound trial strategy.** We employ this presumption to prevent the harsh light of hindsight from distorting counsel's act or omission, making it appear unreasonable.

*Commonwealth v. Searight*, 423 S.W.3d 226, 230 (Ky. 2014) (footnotes and internal quotation marks omitted) (emphasis added).

Likewise, here, every benefit of the doubt must be given to trial counsel's investigation and choice of which witnesses to present at trial, which was objectively reasonable under the circumstances. Moreover, even had Johnson and Lindsey testified at trial consistent with their statements, Patton has failed to demonstrate that such testimony would likely have impacted the outcome of his trial. Absent such a showing, Patton cannot demonstrate his trial was prejudiced.

Concerning Patton's allegations that his counsel failed to sufficiently interview Parker before she testified, Patton has failed to identify *how* a more

-17-

thorough investigation would have affected Parker's testimony at trial. It is well-settled, "vague allegations, including those of failure to investigate, do not warrant an evidentiary hearing and warrant summary dismissal of the RCr 11.42 motion." *Mills v. Commonwealth*, 170 S.W.3d 310, 330 (Ky. 2005), *overruled by Leonard*, 279 S.W.3d 151. Accordingly, the trial court properly denied this claim without an evidentiary hearing.

Finally, in support of his argument that he was entitled to an evidentiary hearing, Patton claims his trial counsel failed to object to inadmissible hearsay and impermissible bolstering during trial. Patton alleges that the testimony of Coffey and K.H regarding the note passed under the door was hearsay; however, the contents of the note were never revealed. He also asserts this testimony improperly bolstered K.H's credibility and testimony. Although the trial court pointed out that many of the challenged statements did not constitute hearsay or bolstering, it concluded that, even if they did, Patton failed to demonstrate how their admission prejudiced him at trial. Without satisfying this requirement, Patton's IAC claims necessarily fail and were properly dismissed by the trial court.

Simply put, Patton's claims do not clear the high bar requiring demonstration of prejudice as set forth in *Strickland* for the reasons discussed herein. Thus, Patton was not entitled to the requested relief due to waiver of his

right to appeal, nor was he entitled to relief on the alleged merits. Finding no error, we must affirm.

## CONCLUSION

Therefore, and for the foregoing reasons, the orders entered by the Edmonson Circuit Court are AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

David L. Stewart
LaGrange, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Thomas A. Van De Rostyne
Assistant Attorney General
Frankfort, Kentucky